RANDOLPH (UNITED STATES v.). See Case No. 16,120.

## Case No. 11,563.

RANDOLPH v. WILMINGTON & R. R. CO. et al.

[33 Leg. Int. 221; [1] 11 Phila. 502.]

Circuit Court, E. D. Pennsylvania. June 5, 1876.

RAILROAD COMPANIES—MORTGAGE—REAL ESTATE—FRANCHISE—BRANCH ROAD—COURTS—EQUITABLE JURISDICTION.

1. A mortgage was made by a railroad company, whose road ran through parts of the states of Delaware and Pennsylvania, of all its property, franchises, &c., to trustees, to secure the payment of certain bonds. Default was made in payment of the interest, and as the trustees declined to sell the Delaware franchises and the Birdsboro extension of the road, the plaintiff, a- bondholder, filed a bill, asking for a decree directing the mortgaged premises to be sold as one property. *Held*, that the court had power to decree relief, notwithstanding that part of the railroad was in the state of Delaware.

2. The equitable jurisdiction of the United States circuit court is not circumscribed by any limitation of the equitable powers of the state courts of Pennsylvania, imposed by the constitution and laws of that state.

3. Where a state expressly authorizes a corporation to mortgage its real estate, authority to mortgage its franchises cannot be implied.

4. A mortgage was made of a railroad as then made or to be made. A later mortgage was created, under authority of a subsequent act of assembly, of a branch or extension of the original road. The special act provided that the later mortgage should be a first lien on the branch. *Held*, that a sale under the original mortgage must be exclusive of the branch.

This was a bill in equity, filed by Edmund D. Randolph, a citizen of New York, for himself and any of his fellow bondholders, under a mortgage given by the Wilmington and Reading Railroad Company, dated March 3, 1868, against that company, the trustees named in that mortgage, the Baltimore, Philadelphia and New York Railroad Co., and afterwards, upon their respective petitions, by order of court, Paxson Kitchen, a bondholder under a junior mortgage of the Wilmington and Reading Railroad Co., and Du Pont, a bondholder under the mortgage on the branch or extension beyond Birdsboro. There was no dispute as to the jurisdiction of this court by reason of the residences of the parties, the plaintiff being a citizen of New York, and defendants being citizens of Pennsylvania and Delaware. The bill sets forth the incorporation of the Wilmington and Reading Railroad Company, by virtue of certain acts of the states of Delaware and Pennsylvania; that under the powers conferred upon it, it executed a mortgage on March 3, 1868, to [George] Brooke, [Abraham] Gibbons and [George] Richardson, as trustees, to secure the payment of $1,250,000 of coupon bonds, of some of which the plaintiff is the holder. This mortgage, by its terms, conveys all "the railways, rails, bridges, fences, wharves, franchises, and real estate belonging to said com-

1 [Reprinted from 33 Leg. Int. 221, by permission.]

pany and the said railroad in the states of Pennsylvania and Delaware and every part and parcel thereof, made or to be made," and also all the personal property, rolling stock, tolls, &c. One of the covenants of the mortgage provides for the payment of the several coupons attached to the bonds on the 1st of April and October of each year, and in case of a default for four months on any such payment, then, at the request in writing of the holders of not less than $100,000 of said bonds, the trustees were required to give notice to the company of the default, and that if the same was not paid within a period of four months more, that the principal of the mortgage would fall due and be collectible. The company defaulted on the coupons due April 1st, 1875. On the 2d of August, 1875, bondholders owning more than $100,000 of bonds requested the trustees to give the required notice, which they did on that day. The second period of four months expired December 31, 1875, and the company had not only failed to pay its April coupons, but had defaulted also on those due in October, so that the entire principal of the mortgage had thereby become due and payable. The bill further alleges that the plaintiff requested the trustees to proceed to sell the road under the power of sale contained in the mortgage, but that they had refused to do so, and prays: 1. That the mortgage be decreed a first lien. 2. That the defendant be ordered to pay the overdue coupons with interest, on a short day to be named by court. 3. That in default of such payment, a decree of foreclosure be entered and an order of sale made. 4. General relief.

Each of the defendants have filed separate answers. The Baltimore, Philadelphia and New York Railroad Company in their answer set forth that the Wilmington and Reading Railroad Company had merged into that corporation, by articles of consolidation, dated June 1st, 1875. They admit all the facts alleged in the bill as to the execution of the mortgage, the default, and the necessary notice. They deny, however, the jurisdiction of this court to enter the decree prayed for, on the ground, first, that by reason of the corporation being created by the acts of the legislatures of the states of Maryland and Pennsylvania, they are an inter-state corporation, and on that account this court has no jurisdiction in the premises; secondly, that the constitution of the state of Pennsylvania has taken away from all the courts of that state jurisdiction to enter the decree prayed for in this suit, and that, therefore, this court has no jurisdiction to do so. They also aver, that while the mortgage covers, in express terms, all the franchises of the Wilmington and Reading Railroad Company in both Pennsylvania and Delaware, that the company had no power to mortgage the franchises in Delaware, as they claim that the state never gave her consent to such a mortgage in terms by any act of her legislature. They further

allege that the portion of the railroad lying between Birdsboro and Reading is not covered by this mortgage; but that the first lien on that portion is a mortgage of a later date to the same trustees, to secure certain bonds to be issued, of which $104,800 were issued and are now outstanding. This answer is adopted by the Wilmington and Reading Railroad Company as their own.

Messrs. Brooke, Gibbons, and Richardson, trustees, by their answer, admit all the facts set forth in the plaintiff's bill, except that the allegation that the mortgage to them covers the franchises in the state of Delaware; and do not admit that the lien of the mortgage of March 3, 1868, extends to and embraces the branch or extension from Birdsboro to a point near Reading.

About two months after the answers of the original defendants were filed, Kitchen, alleging to be a bondholder under a mortgage dated March 18th, 1870, given by the Wilmington and Reading Railroad Company, asked leave of court to intervene as a defendant. His petition was granted, and his answer, as filed, denies the jurisdiction of the court to sell that portion of the road lying in the state of Delaware. It also recites points raised by the railroad companies and the trustees, as above set forth, and apparently adopts these defences as his own. He shows, as a further reason against a decree of sale as prayed for, that no arrangement has been made with a connecting railroad, known as the Lehigh and Berks County Railroad, to secure an entrance to the city of Reading, and also, as an additional reason, that the receivers now in charge of the road are mismanaging it. He also alleges that the amount of bonds outstanding secured by the mortgage on the road between Birdsboro and Reading is much less than the face of the mortgage, and that their amount must first be ascertained before decree. Du Pont, a bondholder under the mortgage of the branch or extension, was also admitted as a defendant. This case was put down by the plaintiff for hearing on bill, answers, and replication.

Plaintiff's counsel contended that from the bill and answers it will appear as conceded:

1. That the Wilmington and Reading Railroad Company duly executed, on the 3d of March, 1868, to the trustees defendants a mortgage, which, by its terms, was a first lien on its franchises as well as on both the real and personal property of the corporation, both in the states of Pennsylvania and Delaware, made or to be made, to secure the plaintiff and his fellow bondholders.

2. That the company has defaulted on its interests since April 1, 1875, and that by so doing it has broken the covenants of its mortgage, and all necessary steps having been taken according to the terms of the mortgage, the whole of the principal and interest fell due and was payable on December 3, 1875.

3. That the trustees, after demand made,

refused to sell the road under the power of sale contained in the mortgage.

Under these circumstances it is clear that a court of equity would, unless grave cause be shown to the contrary, give to the plaintiff the relief prayed for. Nothing is better settled than that on the refusal of a trustee to carry out the terms of a trust, equity will protect the cestui que trust by decreeing a fulfillment of the terms of the trust.

To avoid the protection to which the plaintiff would ordinarily be entitled, the defendants, while raising no issue of fact, have stated in their answer certain reasons in law, which, as they contend, ought to prevent a decree. These reasons may be stated thus:

1. That this court has no jurisdiction to enter the decree prayed for, even if it was proper, because its jurisdiction is only concurrent with that of the state courts of Pennsylvania; and by the constitution of that state, none of her courts have to-day jurisdiction to foreclose a corporation mortgage.

2. That as this railroad extends beyond the territorial jurisdiction of this court and into the neighboring state of Delaware, that, therefore, no decree of this court selling it as an entirety, could be made, and that this court could only decree a sale of that portion in Pennsylvania.

3. That the corporation defendant had no authority from the state of Delaware to mortgage its franchises in that state, and that in so doing its act was ultra vires, and therefore void.

4. That the mortgage of March 3, 1868, is not a first lien on the road lying between Birdsboro and Reading, but as to that portion is subject to a mortgage to secure $104,800, of outstanding bonds.

As to the first point, that the jurisdiction was no greater than the state courts of Pennsylvania, the plaintiff cited: U. S. v. Howland, 4 Wheat. [17 U. S.] 108; Suydam v. Broadnax, 14 Pet. [39 U. S.] 67; Rundle v. Delaware & R. Canal Co., 14 How. [55 U. S.] 80; Marshall v. Baltimore & O. R. R. Co., 16 How. [57 U. S.] 327; Union Bank v. Jolly's Adm'rs, 18 How. [59 U. S.] 503; Hyde v. Stone, 20 How. [61 U. S.] 175; Green v. Creighton, 23 How. [64 U. S.] 90; Payne v. Hook, 7 Wall. [74 U. S.] 425.

As to the second point, that as the railroad extends into Delaware, beyond the territorial jurisdiction of the court, it could not decree its sale as an entirety: Ellis v. Boston, H. & E. R. Co., 107 Mass. 11; Hancock v. Wilmington & R. R. Co. [Fed. Cas. Append.]; Mitchell v. Paige, 2 Paige, 606; McElrath v. Pittsburgh & S. R. Co., 55 Pa. St. 189; Wilmer v. Atlanta & R. Air-Line R. Co. [Case No. 17,776].

As to the third point, that the company was authorized to mortgage its franchise in the state of Delaware, many acts of assembly were referred to, and the following is a copy of a portion of the Delaware act, under which the railroads were merged into the

W. & B. R. R., approved 1866, February 7, volume 13, p. 46.

Section 1 authorizes the Delaware and Pennsylvania State Line Railroad Company "to merge and consolidate its capital stock, franchises and property, with the capital stock, franchises and property of any other railroad company or companies or corporations organized or operated, or having authority to be organized or operated, under the laws of Pennsylvania, whenever the railroads so to be merged or consolidated shall form with each other, or by means of an intervening railroad, a continuous line of railroad, to extend from any point at or near the city of Wilmington towards or into the coal and lime regions of the state."

Section 3. "The several companies, corporations, or railroad parties thereto, shall be deemed and taken to be one corporation, by the name provided in said agreement and act, possessing within this state all the rights, privileges and franchises, and subject to all the restrictions, disabilities and duties of each of such corporations, companies, or railroads so consolidated or merged."

Section 4. "All and singular the rights, privileges and franchises of each of the said companies or corporations, * * * and all the property, real, personal or mixed, * * * shall be deemed and taken to be transferred to and vested in the new corporation. * * * Provided that all rights of creditors and all liens upon the property of either of the said companies or corporations shall be preserved unimpaired, and the respective companies or corporations may be deemed to continue in existence to preserve the same."

Section 6. "The said new corporation may, from time to time, borrow money for corporate purposes and uses, and execute mortgages on all or part of their real estate, and issue bonds to secure the payment of the same." And the following authorities: Railroad Co. v. Harris, 12 Wall. [79 U. S.] 82; Cleveland & P. R. Co. v. Speer, 56 Pa. St. 332; Philadelphia, W. & B. R. Co. v. Maryland, 10 How. [51 U. S.] 376; Delaware Railroad Tax, 18 Wall. [85 U. S.] 208; Wilmington R. Co. v. Reid, 13 Wall. [80 U. S.] 264; Willink v. Morris Canal & Banking Co., 3 Green, Ch. [4 N. J. Eq.] 404.

As to the fourth point, that the mortgage was a first lien on the branch road from Birdsboro to Reading, they cited: 2 Redf. R. R. 501; Bondholders v. Maysville & L. R. W., 9 Am. Ry. T.; Borough of Easton's Appeal, 47 Pa. St. 255; Philadelphia, W. & B. R. Co. v. Woelpper, 64 Pa. St. 366; Seymour v. Canandaigua & N. F. R. Co., 25 Barb. 284; Willink v. Morris Canal & Banking Co., supra; Mitchell v. Winslow [Case No. 9,673]; Galveston R. Co. v. Cowley, 11 Wall. [78 U. S.] 481; Broom, Leg. Max. 198.

The counsel for the trustees, as well as the counsel for Du Pont, contended that the mortgage was not a first lien on the branch or extension beyond Birdsboro. The charter

empowered the corporation "to construct a railroad from a point on the Philadelphia and Reading Railroad, at or near Birdsboro, in Berks county, and thence by the most available route to connect with any railroads" in Chester county. Section 3 authorized it to construct branches or lateral roads not exceeding nine miles. Section 4 empowered it to .borrow money "for the construction of said railroad and the procuring of the rolling stock therefor, and to pledge the said road, rolling stock and franchises, or any part thereof, for the payment thereof." The mortgage, which counsel for Du Pont claimed was a first lien on the branch or extension, was made subsequent to the one upon which these proceedings were taken, and was made under authority of the act of assembly of March 26th, 1869, which was as follows: "That whenever the W. & R. R. R. Co. shall construct any branch or lateral railroad, not exceeding nine miles in length, it shall and may be lawful for·the president and directors of the said company to borrow money on mortgage, in such sum and at such rate of interest not exceeding seven per centum, as they may think proper for the construction of such branch or lateral railroad, and mortgage the same for the payment thereof: Provided, the said company shall not issue bonds for a less denomination than $100, and that the mortgage given to secure their payment shall be a first lien upon such branch or lateral railroad." They argued that the purpose of the road was to go only to Birdsboro, not beyond it. The power was only to pledge for the construction of said railroad, "the said road, rolling stock and franchises." The act of March 26th, 1869, was constitutional, and made the branch mortgage by its provisions a first lien.

And the counsel for the trustees also contended that the mortgage was not a lien upon the franchises of the road in Delaware, and cited Stewart's Appeal, 6 P. F. Smith [56 Pa. St.] 413; City of Bath v. Miller, 51 Me. 341; Wood v. Bedford & B. R. Co., 8 Phila. 94; Com. v. Smith, 10 Allen, 448.

Counsel for Kitchen argued:

1. Before a sale the priorities should be settled and amounts due on prior mortgages be ascertained. The answer of some of the bondholders under the branch mortgage asserts that only $104,800 are due. But the answer of the Wilmington and Reading Railroad and of Robert Frazier (section 5) avers that $435,000 additional are due. The amount must therefore be ascertained by inquiry.

2. It is proper that the cause should be retained until application can be made to the legislature in Delaware for authority to mortgage. the franchise. See 2 Redf. R. R. (5th Ed.) p. 497, § 235, note; Great Western Ry. Co. v. Birmingham & O. J. Ry. Co., 2 Phil. Ch. 597.

3. This court has no jurisdiction to order a sale of that part of the corporate property which lies in the state of Delaware. See

North Indiana R. Co. v. Michigan Cent. R. Co., 15 How. [56 U. S.] 233, 242.

Lewis Waln Smith and N. B. Smithers, for plaintiff.

David W. Sellers, for Wilmington & R. R. Co.

G. W. McPherran and Geo. W. Biddle, for Baltimore. P. & N. Y. R. Co.

Chas. Hart and Chapman Biddle, for the trustees.

Geo. M. Dallas, for Du Pont.

E. Greenough Platt, G. T. Bispham, Wayne McVeagh, George F. Baer, and Saml. Dickson, for Paxson Kitchen.

McKENNAN, Circuit Judge. An early decision of this cause is desired, and as there has not been sufficient time at the command of the court for the preparation of an opinion at length, the following statement of the conclusions reached is made as the basis of the decree to be prepared and entered:

1. This court has jurisdiction to decree the relief prayed for, notwithstanding the fact that part of the railroad, the sale of which is asked, is within the state of Delaware, and such jurisdiction is not circumscribed by any limitation of the equitable powers of the state courts of Pennsylvania imposed by the constitution and laws of that state.

2. The mortgage set up in the bill is the first lien upon the main line only of the Wilmington and Reading Railroad Company, extending from the point to which it is constructed on the Philadelphia and Reading Railroad. at or near Birdsboro, to Wilmington, upon the franchises of the company in the state of Pennsylvania. and upon the other property described in the mortgage.

3. The mortgage is not a lien upon the franchises of the company in the state of Delaware. The express authority conferred upon the corporation by the supplemental act of the legislature of that state of February 7th, 1866, to pledge its real estate as a security for its loans, excludes any argumentative implication of authority to mortgage its franchises for that purpose.

4. The respondent corporation having made default in the payment of interest since April 1, 1875, the whole of the principal and accrued interest secured by the mortgage fell due, and became payable on the third day of December, 1875.

A decree will therefore be prepared by counsel for the sale by the trustees named in the mortgage of all the property bound by it as hereinbefore stated.

### Decree.

And now, June 6th, A. D. 1876, the above cause being heard on bill, answer, and replication, and having been argued by counsel for each of the parties thereto, and it appearing to the court that they have full jurisdiction to grant the relief prayed for in the said bill, it is finally ordered, adjudged and decreed as follows:

1. That the mortgage in the bill of complaint mentioned, dated 3d March, 1868, and made by the Wilmington and Reading Railroad Company, to George Richardson, Abraham Gibbons, and George Brooke, as trustees, is a first lien on the railroad of said company, constructed between a point on the line of the Philadelphia and Reading Railroad, at or near Birdsboro, in the county of Berks, in the state of Pennsylvania, and the city of Wilmington, in the state of Delaware, and upon all the property and premises therein described, except upon the franchises possessed by said company under grants from the state of Delaware, and is effectual and binding thereon, and that the holders of the bonds secured by said mortgage are entitled to all the rights and securities thereby conferred, except as aforesaid.

2. That the said Wilmington and Reading Railroad Company did, on the 1st days of April and October, A. D. 1875, make default on the semi-annual interest on the bonds secured by said mortgage, and that notice being duly served on them according to the terms of said mortgage, the whole of the principal sum thereby secured, as well as the unpaid coupons, fell due and were payable on the 3d day of December, A. D. 1875.

3. That the Wilmington and Reading Company do, within five days, pay to Abraham Gibbons, George Brooke, and George Richardson, the trustees therein named, the amount due on the principal sum thereby secured, being one million two hundred and twelve thousand five hundred dollars ($1,212,-500) with the several unpaid coupons attached to said bonds, together with the interest which has thereon accrued since the several dates of their maturity.

4. That in default of such payment within the period named, the railroad of the said Wilmington and Reading Railroad Company, extending from a point on the line of the Philadelphia and Reading Railroad, at or near Birdsboro, in the county of Berks, in the state of Pennsylvania, to the city of Wilmington, in the state of Delaware, with all the rights, privileges, immunities and franchises of the said Wilmington and Reading Railroad Company, under any and all grants of the state of Pennsylvania, together with the equipment thereof, consisting of all the locomotives, cars and rolling stock belonging to said company, and also all rights of way and land occupied by or used in connection with or for the construction, completion and maintainance of said railroad, with all the bridges, culverts, side tracks, depots, depot grounds, stations, machine shops, buildings, or other structures and improvements of every kind and description, acquired or erected or connected with said railroad, whether in the states of Pennsylvania or Delaware, conveyed by said mortgage to Abraham Gibbons, George Brooke, and George Richardson, trustees, be exposed to public vendue or outcry in one entire lot, in the city of Philadelphia, by the said Abraham Gibbons, George Brooke, and George Richardson, trustees, to whom all needful authority for that purpose is hereby given, after notice of the time, place and conditions of sale, and of the property to be sold, has been given by advertisement in two daily papers in the city of Wilmington and the city of Philadelphia, and one paper in each of the counties of Berks and Chester, twice a week, if the said papers are so often published, for three months prior to the day of sale (a copy of the form of such advertisement is annexed hereto). The property shall be sold to the highest and best bidder upon his signing the conditions of sale, to wit: One hundred thousand dollars ($100,000) of the purchase money shall be paid in cash when the property is struck off, and the balance within thirty days (30) after confirmation of sale by this court, provided that the said balance of the purchase money may be either paid in cash or settled for by receipting to the said Abraham Gibbons, George Brooke and George Richardson, trustees, for the dividend of the said balance of the purchase money, which may appear to be payable on any of the bonds of the said railroad company, and matured coupons attached thereto, secured by the mortgage of March 3d, 1868, which may be held by said purchaser or purchasers, and the delivery of the said bonds and coupons for said settlement shall be deemed equivalent to a cash payment to the extent of the dividend payable on each bond, and be a full acquittance and discharge of said purchaser or purchasers, and when the said purchase money shall have been paid and receipted for, and the said sale confirmed by this court upon the return thereof being made to the court, then the said Abraham Gibbons, George Brooke and George Richardson, shall execute and deliver to said purchaser or purchasers of said railroad, property, estates, premises, rolling stock, appurtenances and franchises, except as aforesaid as above set forth, a good and sufficient deed or deeds granting and conveying the same to him or them in fee simple. And the said purchasers shall thereupon take and hold the same free, clear and discharged from all incumbrances subsequent to the lien of said mortgage, and claim or demand of the Wilmington and Reading Railroad Company, or of any person claiming under them thereon or thereto, by way of equity of redemption or otherwise, and the said Wilmington and Reading Railroad Company, and all persons claiming under them, shall be thenceforth absolutely debarred and foreclosed of and from any such claim or demand whatsoever.

---

RANDON (TOBY v.). See Case No. 14,071.

RANGELEY (BURNHAM v.). See Cases Nos. 2,176 and 2,177.

RANGELEY (SHAPLEY v.). See Case No. 12,707.

RANGELY (DURHAM v.). See Case No. 2,177.