## Case No. 13,523.

STRANG v. MONTGOMERY & E. R. CO.

[3 Woods, 613.] [1]

Circuit Court, M. D. Alabama. May Term, 1879.

#### RAILROAD COMPANIES—SALE UNDER DECREE—WHAT PROPERTY PASSES.

1. The railroad, and other property of a railroad company, which had for several years been in the hands of a receiver, was sold by a decree of the court, which directed a sale of the road, the franchises of the company, right of way, depots, rolling stock, tools and all other property of the company, real, personal and mixed. *Held*, that the purchaser was not entitled to the money, the surplus earnings of the railroad, in the hands of the receiver.

2. The purchaser was entitled to all cars, engines and other property placed on the railroad by the receiver, in the discharge of his duty, to carry on the business of the railroad and keep it in repair.

This cause was heard upon a petition filed therein by the Louisville & Nashville Railroad Company. The petition made the following averments: The Louisville & Nashville Railroad Company had purchased, since July 3, 1877, and was the owner of 965 first mortgage bonds of the Montgomery & Eufaula Railroad Company, and also 1,307 coupons for forty dollars each, and that said first-named railroad company was the legal and equitable owner of said bonds and coupons, and they had been allowed by the master. While the Montgomery & Eufaula Railroad Company was in the process of construction, it issued its bonds for $1,280,000,

¹ [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

with interest coupons at eight per cent., and, under various statutes of the state of Alabama, procured the indorsement of the governor of the state upon said bonds, which indorsement had the effect to give the state a statutory lien on the railroad and other property of the railroad company, to secure the payment of the principal and interest of said bonds. Afterwards, in June, 1870, the said Montgomery & Eufaula Railroad Company executed a mortgage on its railroad and other property to secure an issue of bonds to the amount of $500,000. This mortgage expressly recognized the priority of the lien of the bonds for $1,250,000, indorsed by the state, on the property covered thereby. On May 10, 1870, Samuel A. Strang, trustee of said mortgage, filed his bill in this court for the foreclosure of the same, whereupon A. J. Lane was appointed receiver of the road and property of the defendant company, and at once took possession and control of said property, and possessed, used and employed said property, and conducted the business of said railroad, until May 12, 1879. On May 1, 1875, Mason Young, on behalf of himself and other first mortgage bondholders, filed his bill in this court to foreclose the statutory lien on said railroad, by which the first mortgage bonds were secured. [Case No. 18,166.] These two suits were consolidated, and a final decree made by this court, adjusting the claims of the parties and establishing their rights, and ordering a sale of the property of the defendant company, to pay this said first mortgage, and for that purpose directed the sale of "all the railroad of the Montgomery & Eufaula Railroad Company, and all the franchises, rights, privileges and immunities of said company, and all the property of said company, including road-bed, right of way, depots, workshops, tools and implements, warehouses and real estate of every description, together with all appurtenances thereunto belonging, its rolling stock, locomotives, cars, and all other property, real, personal and mixed, of any kind or description whatever." The original decree of sale was rendered July 3, 1877. Said decree was superseded by an appeal therefrom to the supreme court of the United States, which was dismissed about February 1, 1879, when application was made to this court for a supplemental decree, on February 22, 1879, to carry said original into execution, and said supplemental decree was then made by the court. In pursuance of said decree, all the property and franchises of said railroad company, as described in the decree of July 3, 1877, were advertised for sale, and sold at public sale, on May 1, 1879, to William M. Wadley of Georgia, for the sum of $2,120,000 cash, which has been paid. On May 6, 1879, the sale was confirmed, and the receiver was ordered by this court to deliver to the purchaser the property bought by him. Included in the property in the custody of

the receiver, at the time of the sale, were certain engines and cars and personal property, to be used in carrying on the business of the road, which were purchased by the receiver with the income and earnings of the road, earned while he carried on the same under the orders of the court, and before the day of sale, and a portion of said property was purchased by him after the decree of July 3, 1877, and with income and profits earned after that date. All the cars and rolling stock appertaining to said railroad, as well that purchased by the receiver as aforesaid as that turned over to him when he first took possession of the railroad, were by him delivered to William M. Wadley, the purchaser at said sale. On May 1, 1879, the day of sale, there was in the hands of the receiver the sum of $22,185.92, income and profits of said railroad, earned and collected between July 3, 1877, the date of the original decree of sale, and May 1, 1879, the day of sale. The amount bid at the sale of said railroad was insufficient to pay the first mortgage bonds and interest, and the amount still due thereon largely exceeded the value of said cars and other property purchased by the receiver, and the said sum of money in his hands.

The petition was filed by the Louisville & Nashville Railroad Company, in own behalf, and for the benefit of all other holders of first mortgage bonds. It claimed that the cars and other rolling stock, purchased by the receiver with the income and profits of the road, and by him placed upon and used in carrying on the business of the road, did not pass, by the sale of May 1, 1879, to Wadley, the purchaser, and that this property should be sold by order of the court, for the benefit of creditors of the road, according to their respective priorities, and that the purchaser, Wadley, should be required to deliver back said property when required, and that the said money in the hands of the receiver should be paid into the registry of the court, to be distributed among the creditors of the railroad company, according to their equities. Wadley, the purchaser, answered the petition, admitting substantially the facts set out in the petition, but claiming that not only did the cars and rolling stock, mentioned in the petition, pass to him by the sale, but also the money in the hands of the receiver at the date of the sale, and that his possession of the cars and rolling stock should not be disturbed, and that the court ought to order the said money in the receiver's hands to be turned over to him. Upon the issue of law, presented by these facts, the cause was submitted to the court.

Thomas G. Jones and D. S. Troy, for petitioners.

Henry C. Semple, for purchaser.

WOODS, Circuit Judge. The claim of the purchaser, that the money in the hands of the receiver passed to him by the sale of the railroad and other property of the Montgomery & Eufaula Railroad Company, has no ground to stand on. One of the main purposes in the appointment of a receiver is, that the income of the railroad, so far as not used in the preservation of the property and conducting the business, may be applied to the payment of its mortgage creditors. If surplus earnings come into the hands of the receiver, they ought to be distributed to the creditors of the railroad company, in the order of their priorities. Such is the constant practice of courts of equity. The surplus earnings of a railroad, in the hands of a receiver, are not the property of the railroad company, and are not included in a general description of its property. The possession of the money is in the court, and the equitable title to it is in the creditors of the railroad company. Thus, in American Bridge Co. v. Heidelbach, 94 U. S. 801, the supreme court says: "In this case, upon the default which occurred, the mortgagees had the option to take personal possession of the mortgaged premises, or to file a bill, have a receiver appointed and possession delivered to him. In either case, the income would thereafter have been theirs." This surplus in the hands of the receiver could not, therefore, be properly described as the property of the railroad company, because it was not its property. A court should not be presumed to order so futile a thing as the selling of money, unless its decree to that effect is clear and specific. The decree of sale in this case specifies as the property to be sold, the railroad and franchises and immunities of the company, and all its property, including road-bed, right of way, depots, shops, tools, rolling stock, real estate and all other property, real, personal, and mixed. Such a description of property does not apply to money. Under the celebrated rule, "that when particular words are followed by general ones, as if, after an enumeration of second classes of persons and things, there is added 'and all others,' the general words are restricted in meaning to objects of the like kind with those specified," it is clear that money is not included in the property ordered by the court to be sold. The title to the money did not pass to the purchaser of the railroad, because the money was not the property of the railroad company, and because, even if it had been, it is not fairly included in the description of the property ordered to be sold. So much of the prayer of the petition as asks that this surplus fund be paid into the registry of the court for distribution among the creditors of the railroad company, must be granted.

The next question to be settled is, did the cars and other rolling stock purchased by the receiver from the income of the road, pass, by the sale, to the purchaser? The mortgage which was foreclosed in this case covered not only the railroad and other real

property, but also the cars, engines and other rolling stock, and all descriptions of personal property owned by the railroad company, or to be thereafter acquired. The road and its equipments constituted the complete and entire thing which was covered by the mortgage. The road, on the one hand, and the equipments on the other, were useless unless held and used together. One of the purposes to be accomplished in the appointment of a receiver, was the preservation of the mortgaged property. This could only be done by repairing the track, and replacing the engines and cars when required. Money expended for either of these purposes becomes incorporated into the corpus of the mortgaged property. Money expended in repairing or rebuilding a bridge, and money expended in repairing a locomotive or replacing one that had been destroyed or worn out, both stand on the same footing. Such expenditures are necessary to the preservation of the mortgaged property, and enter into its corpus. The claim of the petitioners is, that after the road passed into the hands of the receiver, all its income and profits become their property by an absolute title, and, therefore, that the engines and other property purchased with such income and profits, vests in them, and do not become a part of the mortgaged property.

What are the creditors entitled to out of the income and profits of the railroad in the hands of a receiver? Clearly, only to the surplus after paying the expenses of conducting the business of the railroad, and preserving the property and keeping it in working condition. The receiver has the power, and it is his duty, even without an order of the court, to apply so much of the income of the property as may be necessary to its care and preservation. He could do this in spite of the mortgagees. But in this case, where the order of the court directed him to use the road and carry on its business, and keep it in repair, there can be no question as to his right and duty. All outlays made by him in good faith, in the ordinary course of the business of the road, with a view to advance and promote its interest, and to render it profitable and successful, may be allowed in passing his accounts. Such outlay may include, not only the keeping the road and its buildings and rolling stock in repair, but also providing such additional accommodations and stock as the necessities of the business may demand. Cowdrey v. Railroad Co. [Case No. 3,293]. If the receiver has the right to do these things, to use the earnings in repairs and replacements of the road and its equipment, how can it be said that the mortgagees are entitled to the gross income? Can they demand that no money shall be expended in repairs? If they cannot, it is because they are not entitled to such part of the income as is necessary to keep the property in repair. They are entitled to the net income. That portion of the receipts which is expended in carrying on the business of the road, and in the preservation of the property, is not income. The income and profits is the surplus after all expenses and repairs and necessary replacements have been made. The mortgagees are entitled to that surplus, and nothing more. These bondholders might as well claim that a bridge rebuilt by the receiver did not pass by the sale, as to claim that engines and cars put upon the road, and necessary to keep up its equipment and do its business, did not pass. Money so expended is no more income and profit than money paid to engineers and brakemen for their services. There is no consideration which would justify the court in holding that the purchasers of the mortgaged property have not acquired title to the rolling stock bought by the receiver. It was as much a part of the mortgaged property as the iron rails put on the track by him. It enhanced the value of the property. The railroad brought a larger sum at the sale, by reason of the fact that this rolling stock had been placed upon it. The mortgagees have received the benefit of this property in the increased price which the railroad brought at the sale. They cannot keep the price of the property and claim the property too.

In accordance with these views, I must hold that the purchaser is entitled to the engines, cars and other personal property referred to in the petition, and that so much of the prayer of the petition as asks that the purchasers be required to deliver up said property, in order that it may be sold again, must be denied.