CHICAGO, ST. P. & K. C. RY. CO. *v.* KANSAS CITY, ST. J. & C. B. R. CO.

(*Circuit Court, W. D. Missouri, St. Joseph Division.* March 11, 1889.)

1. RAILROAD COMPANIES—USE OF OTHER ROAD—CONSOLIDATION.

An ordinance of the city of St. Joseph gave the St. J. & C. B. R. Co. the right of way over certain streets to George alley, provided that its road within the city limits should be open to all other railroad companies that should have obtained permission of the city. Thereafter the St. J. & C. B. R. Co. consolidated with the M. V. R. Co., forming a new company, the defendant, which built its road from the terminus at George alley, and connected with the M. V. tracks, making a continuous road through the city. *Held,* that the

[1] 36 Fed. Rep. 722.

right of another company to use said continuous track within the city limits was by no means so clear as to warrant the issuance of a preliminary mandatory injunction to defendant. It would seem that the connecting track, having been built by the new consolidated company, was not subject to the provisions of the ordinance. The right was made still more doubtful by the fact that a former suit had been prosecuted in a state court till it was ready for final hearing, and then dismissed.

2. SAME—BOND OF INDEMNITY.

The ordinance provided that a company using the St. J. & C. B. R. Co.'s track should bear its share of the expenses, and, if they could not agree on that, the price should be left to arbitrators, and, pending such arbitration, the company desiring to use the road might do so, on filing a sufficient bond to pay the award. *Held,* that this proviso could not affect the question of the company's right to use the tracks. It simply provided a method of compensation.

On Application for a Preliminary Mandatory Injunction.

*Burns & Thompson*, for complainant.

*Mossman & Cravens*, for defendant.

BREWER, J. This case was argued before us last Wednesday, on application for preliminary mandatory injunction. The facts are these: The city of St. Joseph, on September 6, 1867, passed an ordinance which provided in its first section that upon the performance of certain conditions in the ordinance set forth the city would grant to the St. Joseph & Council Bluffs Railroad Company the right of way over certain streets and through certain blocks down to what is now known, I believe, as George alley. The second section contained this provision:

"The St. Joseph & Council Bluffs Railroad Company, upon the acceptance of the conditions of this ordinance, shall at all times hereafter be open to the free use and right to all other railroad companies to run their cars, locomotives, and trains over and upon the said St. Joseph & Council Bluffs Railroad: provided, first, that before any such company so desiring to run its trains over said St. Joseph & Council Bluffs Railroad shall first obtain the consent of the city of St. Joseph to run through the city upon the said St. Joseph & Council Bluffs Railroad."

A second proviso, in substance, was that such company should bear its share of the expenses, and, if they could not agree upon that, the price should be left to arbitrators, "and during the pending of such arbitration the company or companies so desiring to use such road, upon filing sufficient bond of indemnity, obligating themselves to pay the award of the arbitrators, shall not be delayed from using said St. Joseph & Council Bluffs Railroad." Four days thereafter that ordinance was amended in the second section, by the insertion of these words, "within said city limits," so that it reads, "shall at all times hereafter be open to the free use and right to all other railroad companies to run their cars, locomotives, and trains over and along the said St. Joseph & Council Bluffs Railroad within said city limits." Obviously that change was made for fear that the ordinance as it stood in the first instance would give the right to occupy the whole track of the St. Joseph & Council Bluffs Railroad from St. Joseph to Council Bluffs; and, that not being within the thought of the parties, it was changed so as to limit it to the tracks

of the St. Joseph & Council Bluffs Railroad within the city limits. That ordinance was accepted by the railroad company, and became, therefore, the contract between the parties; and in pursuance thereof the company laid its tracks through the city to George alley. Some time thereafter,—in 1870, I believe,—the Missouri Valley Railroad Company, a corporation organized to build a railroad south from St. Joseph towards Kansas City, consolidated with the St. Joseph & Council Bluffs Railroad Company, making a new company, the Kansas City, St. Joseph & Council Bluffs Railroad Company, the defendant here. This new and consolidated corporation subsequently put down tracks and built its railroad through the city of St. Joseph from George alley, the southern terminus of the St. Joseph & Council Bluffs Railroad,—not alone the southern end of its track, but also the southern end of its right of way under the first ordinance,—and connected with the track of the Missouri Valley Railroad Company, so as to form a continuous track through the city in a northerly and southerly direction. The complainant, a corporation which has been building a railroad from Des Moines, to the city of St. Joseph, having obtained the consent of the city, now desires to use the tracks of the Kansas City, St. Joseph & Council Bluffs Railroad Company through the entire city of St. Joseph, and has filed this bill, asking a mandatory injunction.

The stipulation in the second section, with reference to a bond of indemnity, that during the pending of such arbitration the company so applying, "upon filing a sufficient bond of indemnity, obligating themselves to pay the award of the arbitrators," shall not be delayed from using said track, applies simply to the question of compensation, but not to the question of right. It means, simply, the question of right being clear, that if the parties differ upon the matter of compensation, the court may at once interfere. But that does not at all detract from the rule that where a mandatory injunction is asked—an injunction which changes the present *status*—the rights of the parties must be clear before the court will issue a preliminary injunction. The difference between a mandatory injunction and one which simply preserves the *status* is this: If the right be doubtful the court may issue injunction to prevent any change of *status* until the litigation finally determines the rights of the parties. But where the injunction will change the *status* of the parties—and that is the nature of the injunction asked here, being to compel the Kansas City, St. Joseph & Council Bluffs Railroad Company to permit the trains and cars of the complainant to run over its tracks—the right must be clear before the court will, in the first instance, issue an injunction. Is it clear? At the time this ordinance was passed the corporation in whose favor it was passed was authorized to build a railroad from St. Joseph to Council Bluffs. The ordinance gave it the right to enter the city, and come to a certain point in the city,—George alley, —with the stipulation that any other road, with the consent of the city, might have a right of user of its tracks within said city limits. The contract is to be read and interpreted in the light of the situation of the parties at the time it was made. Now; in this view, is it not a fair con-

struction that the burden intended to be imposed upon the railroad company was simply in respect to the user of the tracks, the right of which was given by the ordinance? The parties were contracting about a single, limited right of way, and ought not all general words in their contract to be construed as limited to that particular right of way which was the subject-matter of the balance of the contract? And would it not be a strained construction to extend the burden imposed by such general words to matters in respect to which the parties were apparently not contracting?

But, further, it is not the St. Joseph & Council Bluffs Railroad Company that built this additional track. It is a new and consolidated company; and while the consolidation does not relieve the new consolidated company from the burdens which rested upon the old company, it takes only those burdens which rested at the time of the consolidation; and whatever rights, franchises, and privileges the new company may thereafter acquire are its own, and not incumbered with the burdens which rested upon the old company. The supreme court, in the case of *Car Co.* v. *Railway Co.*, 115 U. S. 587, 6 Sup. Ct. Rep. 194, discusses this question. In that case the Missouri Pacific Railway Company had made a contract with Pullman's Palace Car Company to operate its coaches— Pullman cars—on its own line of road, and on all roads "which it now controls, or may hereafter control." Speaking of this, the court, by Mr. Chief Justice WAITE, uses this language:

"The new company assumed on the consolidation all the obligations of the old Missouri Pacific. This requires it to haul the Pullman cars, under the contract, on all roads owned or controlled by the old company at the time of the consolidation, but it does not extend the operation of the contract to other roads which the new company may afterwards acquire. The power of the old company to get control of other roads ceased when its corporate existence came to an end, and the new company into which its capital stock was merged by the consolidation undertook only to assume its obligations as they then stood. It did not bind itself to run the cars of the Pullman Company on all the roads it might from time to time itself control, but only such as were controlled by the old Missouri Pacific. Contracts thereafter made to get control of other roads would be the contracts of the new consolidated company, and not of those on the dissolution of which that company came into existence. It follows that the present Missouri Pacific Company is not required, by the contract of the old company, to haul the Pullman cars on the road of the St. Louis, Iron Mountain & Southern Company, even if it does now control that road, within the meaning of the contract."

So the power of the St. Joseph & Council Bluffs Railroad Company to lay new tracks, or to acquire the right to lay any tracks within the city of St. Joseph, or anywhere else, ceased upon the consolidation. Whatever rights were thereafter acquired were acquired by the new company; and, while it took all the burdens that rested upon the old, it took them as they were limited at the time the consolidation took place.

An illustration or two will, I think, make this clear. Suppose the ordinance had stood as originally passed, and carried with it the obligation of the St. Joseph & Council Bluffs Railroad Company to permit any other railroad company to use its entire track, from St. Joseph to Coun-

cil Bluffs, that being the extent of the franchise of the old company; and suppose, by subsequent legislation or subsequent consolidation, that company or its successor had acquired the right to build from St. Joseph to St. Louis,—would the burden which rested upon the old company, and rested upon the road which it then owned, go with it to the new road, and to every road and every track which it or the new company of which it formed a part might thereafter acquire the right to build and maintain? Or, if any other burden was cast upon it, or an exemption from taxation given, would not that burden or exemption be limited to that which was in existence at the time it was imposed or granted? When all its right is exhausted, when its power is ended, and a new company is formed, if that new company acquires additional rights, and builds other tracks, can it be said that they are included within the burden or exemption? Can it be said that it is perfectly clear that this new company is under obligations to permit the use of its entire track through St. Joseph by the complainant? Our impression very strongly is that the right does not exist, and certain it is that it cannot be affirmed that it is clear that the right to use those tracks exists. And there is another matter. No stipulation which the parties can make can relieve the court from the duty of exercising a sound discretion in all matters of injunction. Parties cannot contract away its right, or relieve the court from that duty. In every case where application for preliminary injunction, mandatory or otherwise, is made, the discretion of the court must be appealed to, and the parties cannot in advance by contract or stipulation relieve the court from the duty of acting upon that discretion.

Now, it appears from the testimony here that months since—away along last summer—this complainant commenced proceedings in the state court, and prosecuted the same so far that they were ready for final hearing, and then dismissed. The reasons for that are not disclosed. I presume they were satisfactory. But the fact appears, when it asks this court to issue a preliminary mandatory injunction, changing the *status* of property and course of business in St. Joseph, that the parties had had ample time by proper proceedings in this or other court to have had the question of right absolutely settled by final decree. And for us now, with that fact staring us in the face, and with the views I have just intimated, to interfere by preliminary injunction, would be an exercise of discretion not proper to courts of chancery. We are compelled to deny the application for preliminary injunction.