In re NEW YORK, S. & W. R. CO.

Nos. 7159, 7164–7167, 7184.

Circuit Court of Appeals, Third Circuit.

Jan. 19, 1940.

As Amended on Denial of Rehearing March 18, 1940.

Larkin, Rathbone & Perry, of New York City, and Pitney, Hardin & Skinner, of Newark, N. J. (A. M. Lewis and Hovey C. Clark, both of New York City, Donald B. Kipp, of Newark, N. J., and Curtis Heath, of New York City, of counsel), for Central Hanover Bank & Trust Co.

J. Harlin O'Connell, of New York City, and John A. Laird, of Newark, N. J. (Ballard, Spahr, Andrews & Ingersoll, of Philadelphia, Pa., of counsel), for New York Trust Co.

Harrison & Roche and Edward S. Sanford, all of Newark, N. J. (J. H. Harrison, of Newark, N. J., of counsel), for National State Bank of Newark, N. J.

H. A. Taylor, of Cleveland, Ohio, and William Clark Mason, of Philadelphia, Pa., for C. E. Denney and John A. Hadden, Trustees of Erie R. Co.

Anderson, Williamson, Rugge & Coleman, of Jersey City, N. J. (J. Fisher Anderson and Raymond A. Coleman, both of Jersey City, N. J., of counsel), for Commercial Trust Co. of New Jersey.

Stewart & Shearer, of New York City, and Langdon E. Morris, of Newark, N. J. (George L. Shearer and McCready Sykes, both of New York City, and Langdon E. Morris, of Newark, N. J., of counsel), for United States Trust Co. of New York.

Before BIGGS, MARIS, and BIDDLE, Circuit Judges.

MARIS, Circuit Judge.

These are appeals from an order of the District Court for the District of New Jersey, fixing and determining the extent and priority of various mortgage liens upon the property of the New York, Susquehanna and Western Railroad Company, the debtor in a railroad reorganization proceeding pending in that court under section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205.

The corporate history of the debtor began on March 25, 1880, when the Midland Railroad Company of New Jersey was incorporated to purchase at foreclosure sale the railroad, property and franchises of the New Jersey Midland Railway Company. The railroad thus acquired extended from the New York state line near Unionville, through Two Bridges, in the County of Sussex, to Marion, in the County of Hudson, New Jersey. The Paterson Extension Railroad Company of New Jersey was incorporated under the laws of New Jersey on April 18, 1881, to construct and operate a short line of road in the City of Paterson, New Jersey. On May 26, 1881, the Midland Railroad Company of New Jersey was consolidated with the Paterson Extension Railroad Company and four other railroad companies of New Jersey and Pennsylvania to form the New York, Susquehanna and Western Railroad Company, herein referred to as the first Susquehanna Company. Through these four other railroad companies the consolidated company acquired a line of railroad from Two Bridges to Gravel Place, near Stroudsburg, Pennsylvania.

On December 22, 1882, the first Susquehanna Company was consolidated with Blairstown Railway Company, to form the second Susquehanna Company. On February 17, 1892, the Hudson River Railroad and Terminal Company was incorporated under the laws of New Jersey to construct and operate a line of road from Little Ferry to Edgewater, New Jersey, on the Hudson River, a distance of about three miles. On April 5, 1893, the second Susquehanna Company consolidated with the Hudson River Railroad and Terminal Company to form the third Susquehanna Company, the debtor herein. The following tabulated statement shows the mortgages

involved in this proceeding, the date when each was executed, the issuing company and the bonds outstanding thereunder as found by the District Court:

4. The Passaic branch (about 3 miles long), owned by the Passaic and New York Railroad Company.

5. The Susquehanna Connecting branch

| Mortgage | Date of Execution | Issuing Company | Bonds Outstanding |
|---|---|---|---|
| First Mortgage of Midland Railroad Company of New Jersey (hereinafter called the "Midland Mortgage") | April 1, 1880 | Midland Railroad Company | $3,489,000 |
| First Mortgage of Paterson Extension Railroad Company (hereinafter called the "Paterson Extension Mortgage") | June 1, 1881 | Paterson Extension Railroad Company | 200,000 |
| First and Refunding Mortgage of New York, Susquehanna and Western Railroad Company (hereinafter called the "Refunding Mortgage"). | January 1, 1887 | Second Susquehanna Company | 3,744,000 |
| Second Mortgage of New York, Susquehanna and Western Railroad Company (hereinafter called the "Second Mortgage"). | February 1, 1887 | Second Susquehanna Company | 448,000[1] |
| General Mortgage of New York, Susquehanna and Western Railroad Company (hereinafter called the "General Mortgage"). | August 1, 1890 | Second Susquehanna Company | 2,552,000 |
| Terminal First Mortgage of New York, Susquehanna and Western Railroad Company (hereinafter called the "Terminal Mortgage") | May 1, 1893 | Third Susquehanna Company (Debtor) | 2,000,000 |

The properties, the liens upon which are in controversy in this proceeding, may be briefly described as:

1. The Edgewater Terminal properties and the Little Ferry Yard, owned by the debtor.

2. Certain tracks along the Hudson River north and south of the Edgewater Terminal, owned by the Erie Terminals Railroad Company.

3. The Lodi branch (approximately 3 miles long), owned in part by the Lodi Branch Railroad Company and in part by The Hackensack and Lodi Railroad Company.

(about 7½ miles long), owned by the Susquehanna Connecting Railroad Company.

6. The capital stock owned by the Debtor in the Erie Terminals Railroad Company, the Lodi Branch Railroad Company, the Hackensack and Lodi Railroad Company, the Passaic and New York Railroad Company and the Susquehanna Connecting Railroad Company, which companies hold title, respectively, to the tracks and branches referred to in Nos. 2 to 5 above, and the leases and operating agreements between said companies and the Debtor.

7. The Paterson Extension branch, owned by the Debtor.

---

[1] $552,000 additional Second Mortgage bonds are held by the Trustee under the General Mortgage as security for the General Mortgage bonds.

8. The Mine Branches in the State of Pennsylvania, owned by the Debtor.

9. Fifteen lots in the City of Passaic bounded by Mercer and Hudson Streets, owned by the Debtor.

10. The Debtor's rolling stock and equipment.

The trustee of the Terminal mortgage claimed and was granted by the district court a first lien upon the Edgewater Terminal properties and the Little Ferry Yard. This priority is disputed by the trustees of the Midland, Refunding and Second mortgages, each of whom relies upon an after-acquired property clause in its mortgage as giving it a lien upon these properties superior to that of the Terminal mortgage. If the after-acquired property clauses of these mortgages were valid and survived consolidation, questions to be hereinafter discussed, their lien was nevertheless subject to any encumbrances and equities which adhered to the after-acquired property when acquired.[2] Consequently if any of this property was acquired by the mortgagor or its successor through the use of funds advanced upon a purchase money mortgage, the lien of the earlier mortgages would be subject thereto.

The first question, therefore, for us to decide is whether the Terminal mortgage was properly held to be entitled to the status of a purchase money mortgage upon the Edgewater Terminal and other properties acquired by the debtor from the Hudson River Railroad and Terminal Company in the consolidation of 1893. The intent that the Terminal mortgage should be a first lien upon all the properties of the Hudson River Railroad and Terminal Company is clearly expressed in the 1893 agreement of consolidation in the following language: "And it is further expressly understood and agreed by the parties hereto that, in consideration of the fact that the railroad and terminal facilities of the party of the second part are at the present time in process of construction, and in order to provide for the full payment of the same, the party of the second part hereto has made an arrangement for a loan of two million dollars, the same to be secured by a first mortgage upon all its property and franchises. Therefore the transfer of the property and franchises of the party of the second part to the Consolidated Company, hereby created and provided for, is subject to the terms of the said arrangement for the loan of two millions of dollars; and it is understood and agreed that the said Consolidated Company shall, as soon as said consolidation is completed, issue its bonds to the amount of two million dollars, to secure the same by a mortgage or deed of trust giving and effecting a first lien upon the property and franchises belonging to the party of the second part."

The district court found, upon sufficient evidence, that the $2,000,000 of bonds issued under the Terminal mortgage were devoted in whole to the reimbursement of the debtor for expenditures made in the acquisition and construction of the Terminal and other railroad properties formerly belonging to the Hudson River Railroad and Terminal Company. The fact that the proceeds were used in reimbursement for prior expenditures[3] and that an interval elapsed between the acquisition of the property and the execution of the mortgage does not defeat the priority of the lien of the mortgage.[4] The test is not whether the deed of acquisition and the purchase money mortgage were executed at the same instant but whether they were part of one continuous transaction and intended so to be. Nor was there anything fraudulent in the creation of the Hudson River Railroad and Terminal Company, which took title to these properties prior to the 1893 consolidation, or in the covenant in the consolidation agreement providing for the lien.[5] We conclude that the district court was correct in holding that the lien of the Terminal mortgage upon the Edgewater Terminal properties was prior to those of the four earlier mortgages. The same is true as to those parcels of the Little Ferry Yard which were acquired by the Hudson River Railroad and Terminal Company before the consolidation.

---

[2] United States v. New Orleans Railroad, 79 U.S. 362, 20 L.Ed. 434; Daly v. New York & Greenwood Lake Ry. Co., 55 N.J.Eq. 595, 38 A. 202.

[3] Guaranty Trust Co. of New York v. Minneapolis & St. L. R. Co., 8 Cir., 36 F.2d 747, 761 certiorari denied, 281 U. S. 756, 50 S.Ct. 407, 74 L.Ed. 1166.

[4] Stewart v. Smith, 36 Minn. 82, 30 N.W. 430, 1 Am.St.Rep. 651; Marin v. Knox, 117 Minn. 428, 136 N.W. 15, 40 L. R.A.,N.S., 272.

[5] Farmers' Loan & Trust Co. v. Denver, L. & G. R. Co., 8 Cir., 126 F. 46.

■ This brings us to the questions previously mentioned, namely, whether the after-acquired property clauses of the mortgages were sufficient in scope to extend to the property in dispute and whether they survived consolidation. It has long been the accepted rule that the lien of a mortgage containing an after-acquired property clause is valid in equity and attaches from the time the property is in fact acquired by the mortgagor.[6] This rule is not disputed here. The argument advanced is that the Terminal properties are not of the kind intended to be covered by the after-acquired property clauses and that even if they were the clauses do not apply to properties acquired by corporations which are the successors by consolidation of the mortgagor.

The Midland mortgage purported to cover

"All and singular the line of railroad of the said party of the first part (formerly known as the 'New Jersey Midland Railway'), as the same has been constructed, from the State line at or near Unionville, in the State of New York, to the Hudson River including * * * all real or personal property, held or acquired, or hereafter to be held or acquired by the said Company, its successors or assigns, for use in connection with the aforesaid railroad of the party of the first part, or with any part thereof, or with the business of the same, * * *"

The Refunding and Second mortgages purported to cover "All and singular the line of railroad, with the branches and connections thereof, known as the 'New York Susquehanna and Western Railroad,' extending from Marion, in the County of Hudson and State of New Jersey, through the Counties of Hudson, Bergen, Passaic, Morris, Sussex and Warren, in the State of New Jersey, to Gravel Place, in the County of Monroe and State of Pennsylvania; also a branch thereof extending from a point thereon known as Two Bridges, in the County of Sussex and State of New Jersey, to the line between the States of New Jersey and New York, at or near Unionville, in the last mentioned State; * * * and including, also, * * * all real or personal property, held or acquired, or hereafter to be held or acquired by the said Company, its successors or assigns,

for use in connection with the aforesaid railroad of the party of the first part, its franchises, extensions or connections, or with any part thereof, or with the business of the same, * * *"

The General mortgage purported to cover "All and singular the line of railroad, with the branches and connections thereof, known as the 'New York, Susquehanna and Western Railroad,' extending from Marion, in the County of Hudson, and State of New Jersey, through the counties of Hudson, Bergen, Passaic, Morris, Sussex and Warren, in the State of New Jersey, to Gravel Place, in the county of Monroe, and State of Pennsylvania; also a branch thereof extending from a point thereon known as Two Bridges in the County of Sussex, and State of New Jersey, to the line between the States of New Jersey and New York at or near Unionville, in the last mentioned State; * * * including also * * * all real or personal property held or acquired, or hereafter to be held or acquired, by the said Company, its successors or assigns, for use in connection with the aforesaid railroad of the party of the first part, its franchises, extensions or connections, present and future, or with any part thereof, or with the business of the same, * * *"

■ It will be seen that in each case the after-acquired property clause included all property thereafter to be acquired by the mortgagor or its successors for use in connection with the railroad described in the mortgage or with any part of it or with its business. We think it clear from the record that the Edgewater Terminal properties and Little Ferry Yard were acquired for use in connection with the railroad described in the four earlier mortgages and its business as contemplated in those mortgages. Terminals and freight classification yards are obviously important and indeed essential elements of a complete railroad enterprise. The original plan of the Midland Railway was to build a railroad line to the Hudson River, and although the consummation of this plan was long delayed and the terminal facilities of the Pennsylvania Railroad were for many years used instead, the final acquisition of the Edgewater Terminal on the Hudson River was but the fulfillment of the original plan.

---

[6] Pennock et al. v. Coe, 64 U.S. 117, 16 L.Ed. 436; Central Trust Co. v. Kneeland, 138 U.S. 414, 11 S.Ct. 357, 34 L.Ed. 1014; Williamson and Upton v. New Jersey Southern R. R. Co., 25 N.J.Eq. 13.

Title to all the parcels of real estate comprising the Edgewater Terminal properties was taken in the name of the Hudson River Railroad and Terminal Company prior to the consolidation of 1893 and first came to the debtor through that consolidation. The question accordingly is squarely presented as to whether the after-acquired property clauses survived consolidation; in the case of the Midland Mortgage the consolidations of 1881, 1882 and 1893, and in the cases of the Refunding, Second and General mortgages the consolidation of 1893.

■ The use of the word "successors" in the after-acquired property clauses shows an intent that the mortgages should extend to property thereafter acquired by the successors through consolidation of the mortgagor companies.[7] In Schmoele v. Atlantic City R. R. Co., 110 N.J.Eq. 597, 601, 160 A. 524, 526 the New Jersey Court of Errors and Appeals, speaking of the word "successors" said "That term means, ordinarily, in the case of a corporation, another corporation which, by a process of amalgamation, consolidation, or duly authorized legal succession, has become invested with the rights and has assumed the burdens of the first corporation."

Section 4 of the New Jersey Act of March 25, 1881, Chap. 178 (P. L. p. 70 [224]) authorizing railroad companies to consolidate, contained the following proviso: "provided, however, that all rights of creditors and all liens upon the property of either of said corporations shall be preserved unimpaired, and the respective corporations may be deemed to continue in existence to preserve the same; and all debts, liabilities and duties of either of said companies shall thenceforth attach to said new corporation, and be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."

■■ We think that the district court rightly held that by virtue of this statute and of the use of the word "successors" the obligation of the after-acquired property clauses survived the various consolidations and attached to the succeeding corporations.[8] It is obvious that such a clause could give no present lien on non-existent properties. Whether considered as an implied promise to give future security or as an equitable assignment to be effective in the future it created, not a present lien, but merely an obligation upon the mortgagor to subject to the lien of the mortgage all after-acquired property of the character described in the clause. This is just such an obligation as both the parties to the mortgages and the New Jersey statute contemplated should be imposed upon any corporation which might succeed to the property and franchises of the mortgagor as a result of a consolidation. It must be borne in mind that in the present case the trustees of the earlier mortgages seek to compel the debtor to fulfill the obligations of its predecessors to bring under their mortgages that property only which it has acquired for use in connection with the property originally mortgaged. This case does not involve the more difficult question which would arise if under a clause purporting to include all after-acquired property of the mortgagor it were sought to subject to it property received by the mortgagor's successor from another party to the consolidation or property thereafter acquired which bore no relation to the property originally mortgaged.

■ Some claim is made by the trustees of the Refunding and Second mortgages that the after-acquired property clause of the Midland mortgage indicates that it was not the intent of the parties that the clause should survive consolidation. The intent of the mortgagor and mortgagee is of course of the utmost importance.[9] We think, however, that the language used in the Midland mortgage differs in no material respect from that used in the Refunding and Second mortgages. We accordingly conclude that the after-acquired property clauses in the Midland, Refunding, Second and General mortgages were binding upon the debtor as corporate successor of the mortgagors and operated to extend the liens of those mortgages to the Edgewater Terminal and Little Ferry Yard properties.

■ It appears that certain parcels of the land comprising the Little Ferry Yard

[7] Guaranty Trust Co. v. Minneapolis & St. Louis R. Co., supra.

[8] National Bank of Wilmington & Brandywine v. Wilmington, N. C. & S. Ry. Co., 9 Del.Ch. 258, 81 A. 70; Citizens' Savings & Trust Co. v. Cincinnati & D. Traction Co., 106 Ohio St. 577, 140 N.E. 380.

[9] Compton v. Jesup, 6 Cir., 68 F. 263, 287, affirmed, 167 U.S. 1, 17 S.Ct. 795, 42 L.Ed. 55.

were acquired by the debtor after the consolidation of 1893. These parcels were, therefore, not subject to the lien of the Terminal mortgage as a first lien. They were within the scope of the after-acquired property clause of that mortgage, however. It is, therefore, a lien upon them subordinate to the four earlier mortgages.

This brings us to the claim of the trustee of the General mortgage that, subject only to the lien of the Terminal mortgage, it is entitled to priority of lien on the Edgewater Terminal property and the Passaic lots by reason of the use of General mortgage bonds for the acquisition of these properties. The district court found as a fact, we believe upon sufficient evidence, that $294,152.73 was so used in connection with the Terminal properties. It awarded the General mortgage priority of lien on the Terminal properties in that amount. We have already shown that the General mortgage was intended to and does have a lien on the Edgewater Terminal property by reason of its after-acquired property clause. This lien is by the very terms of the mortgage expressly made subject to the prior liens of the Midland, Refunding and Second mortgages. Furthermore, there is no indication in the General mortgage that the parties intended that it should have a prior lien on after-acquired property purchased with the proceeds of the bonds which it secured. An identical claim to an equitable lien, based upon the fact that the money advanced was used in the purchase of the property upon which the lien was claimed, was made without success in Shooters Island S. Co. v. Standard Shipbuilding Corp., 3 Cir., 293 F. 706. We need add nothing to the discussion of this question by Judge Woolley in that case.

■ We conclude that in the absence of an agreement express or implied that the bonds should be so used and a lien should attach, the General mortgage did not become a lien upon the Terminal properties or the Passaic lots merely because of the fact that some of the bonds secured by it were used to pay for those properties. As we have shown, it did become a subordinate lien upon the Terminal properties by virtue of its after-acquired property clause. Neither the General mortgage nor the other mortgages became a lien upon the Passaic lots since these were not shown to have been acquired for use in connection with the railway of the debtor or its business and were, therefore, not within the after-acquired property clauses of the mortgages.

■ The district court held that none of the mortgages here involved was a lien on any of the property of the Passaic and New York Railroad Company, The Lodi Branch Railroad Company, The Hackensack & Lodi Railroad Company, the Susquehanna Connecting Railroad Company, all wholly owned subsidiaries of the debtor; or on the property of the Erie Terminals Railroad Company, three-fifteenths of the capital stock of which the debtor owns; or upon the capital stock or any other interest of the debtor in these railroads; or upon the debtor's interest in operating and traffic contracts with other railroads. We find no merit in the arguments advanced by the trustees of the Midland, Refunding and Second mortgages that the court erred in these findings and conclusions. The district court further held that the Midland mortgage was not a lien upon the Paterson Extension Branch and the Mine Branches in Pennsylvania, but that the Refunding, Second and General mortgages were valid liens thereon, subject, in the case of the Paterson Extension Branch to the lien of the Paterson Extension mortgage. We find no error in these holdings. The district court reserved decision upon the issue as to which mortgage or mortgages had liens upon the rolling stock and equipment and that issue is, therefore, not before us.

The order of the district court is modified to the extent indicated in this opinion. As so modified, it is affirmed.