## In re NEW YORK, SUSQUEHANNA & WESTERN R. CO.

### No. 26175.

United States District Court
D. New Jersey.
July 11, 1951.

982

Lum, Fairlie & Foster, Newark, N. J., for trustee.

J. Harlin O'Connell, New York City, for Indenture Trustee and Gen. Mortgage Corp.

Root, Ballantine, Harlan, Bushby & Palmer, New York City, by Roy M. D. Richardson, New York City, for N. Y. Life Ins. Co.

Harrison, Roche & Darby, Newark, N. J., by Edwards S. Sanford, Newark, N. J., for Nat. State Bank of Newark, Trustee under Second Mortgage.

Anderson, Rugge & Coleman, Jersey City, N. J., by Raymond A. Coleman, Jersey City, N. J., for Commercial Trust Co. of N. J., Refunding Mortgage Trustee.

McCarter, English & Studer, Newark, N. J., by Nicholas English, Newark, N. J., for Protective Committee for Holders of General Mortgage Bonds.

Schmid & Bourne, Summit, N. J., by Coleman Burke, New York City, for General Mortgage Bondholders & Protective Committee.

Rathbone, Perry, Kelly & Drye, New York City, by Leland J. Markley, New York City, for Central Hanover Bank & Trust Co., Mortgage Trustee.

SMITH, District Judge.

This proceeding has for its object the reorganization of a railroad corporation, hereinafter identified as the Debtor, under Section 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205. The original plan of reorganization which had been approved by the Interstate Commerce Commission and certified to this court, pursuant to the provisions of the said Act, was referred back to the Commission for reconsideration on June 12, 1950. (See Order No. 427 entered June 12, 1950). The reasons which prompted this action by the court are fully discussed in an opinion which was filed on June 7, 1950; further discussion of these reasons seems unnecessary.

The proceedings were reopened by the Commission and a further hearing was held for the purpose of "receiving (a) evidence relating to modification of the plan, (b) evidence essential to bring the record of the (D)ebtor's operations up to date, and to assist in reconsideration of the plan, and (c) any other evidence pertinent to the reconsideration of the plan or the development of a new plan." Thereafter the original plan of reorganization was modified and, as modified, approved by the Commission. The modified plan of reorganization was certified to the court pursuant to subdivision d of section 77 of the Act, and is now before the court for approval. The approval of the Plan of Reorganization is recommended and urged by counsel appearing on behalf of the interested parties affected by the plan. The only objection is that of Miss Edith A. Merritt, who as of this date holds but two "General Mortgage Bonds."

## Capitalization

The original plan of reorganization, as proposed by its proponents, was predicated upon a proposed capitalization of $16,250,000, exclusive of equipment obligations in the approximate amount of $452,000. This proposed capitalization was adjusted downward after hearings on the plan and hearings on the several petitions for a modification of the capital structure. The present Plan of Reorganization proposes a total capitalization of $15,500,000, exclusive of equipment obligations. There are no objections at this time to the proposed capitalization, and we therefore see no reason to discuss it at length.

The proposed capitalization of the Debtor, as ultimately modified by the Commission, includes the following items:

| | |
|---|---|
| Equipment Obligations ...... | $ 452,844. |
| Terminal First Mortgage Bonds ................. | 2,000,000. |
| First and Consolidated Mortgage Bonds ............. | 3,000,000. |
| General Mortgage Income Bonds ................. | 4,000,000. |
| Preferred Stock ........... | 3,000,000. |
| Common Stock (No par value) | 3,500,000. |
| Total ................. | $15,952,844. |

It should be noted that the Commission originally approved a proposed capitalization of $14,000,000, exclusive of equipment obligations. An increase of $1,500,000 was approved by the Commission after hearings

on the several petitions for modification. The increase is primarily reflected in the more equitable treatment accorded the holders of General Mortgage Bonds.

We have examined the proposed capital structure of the Debtor in the light of the principles enunciated by the Supreme Court in the case of Ecker v. Western Pacific Railroad Corp., 318 U.S. 448, 63 S.Ct. 692, 87 L.Ed. 892. An examination of the record discloses that the proposed capitalization was established by the Commission after a careful study and appraisal of many factors, to wit, the physical condition and value of the properties, the present and prospective earning power, the present and prospective traffic revenues, maintenance costs, the economic and physical value of improvements made by the Debtor during these proceedings, and the economic conditions which will contribute to the feasibility of the plan of reorganization.

It appears from the evidence that the probable earning power of the Debtor, properly evaluated, is adequate to support the proposed capitalization. There appears to be no reason to summarize the evidence because a detailed summary is embodied in the several reports of the Commission, particularly the Report of July 19, 1944, and the Supplemental Reports of March 5, 1945 and March 12, 1951. We have examined these reports and we find that the summaries therein contained are supported by the evidence. It is our opinion that the proposed capitalization is adequately supported by the evidence, is in accordance with legal standards, and is compatible with the public interest.

Treatment of Existing Securities

*Present Mortgages and Securities.*

The several properties of the Debtor are encumbered by mortgages which may be sufficiently identified as follows: Terminal Mortgage, Midland Mortgage, Refunding Mortgage, Second Mortgage, Paterson Extension Mortgage, and General Mortgages. These mortgages are valid and subsisting liens on the properties therein described and, by reason of after-acquired property clauses therein contained, on certain other after-acquired properties. See: In Re New York, S. & W. R. Co., 3 Cir., 109 F.2d 988. These mortgages were given to secure several bond issues which may be similarly identified as follows: Terminal Bonds, Midland Bonds, Refunding Bonds, Second Mortgage Bonds, Paterson Extension Bonds, and General Mortgage Bonds.

The scope of these mortgages and the relevant priorities thereof have been heretofore determined in proceedings in this court. See Findings of Fact and Conclusions of Law, filed May 25, 1939; Order No. 129, filed May 25, 1939; Order No. 235, filed November 2, 1942; In Re New York, S. & W. R. Co., supra. These mortgages have been heretofore discussed by the United States Court of Appeals for the Third Circuit in the opinion hereinabove cited, and a further discussion seems unnecessary.

*Allocation of New Securities.*

The plan of reorganization provides for the issuance and allocation of new securities, which may be identified as follows: New Terminal Mortgage Bonds, New First and Consolidated Mortgage Bonds, and New General Mortgage Income Bonds. The plan further provides for the issuance and allocation of preferred and common stock. The new securities and stock will be available for distribution to present security holders and holders of unsecured claims.

The new securities and stock are to be allocated and distributed in accordance with Section XIII of the Plan of Reorganization, which contains the following provisions:

"Holders of the existing Terminal bonds shall receive for each $1,000 principal amount thereof new Terminal bonds in a like principal amount, together with interest accruing on the existing bonds to January 1, 1944, in cash. Interest paid on the existing Terminal bonds for any period or periods subsequent to the effective date of the plan shall be applied to and treated as payments of interest on the new Terminal bonds.

"Holders of the existing bonds of the Midland Railroad Company of New Jersey

shall receive for each $1,000 bond and all unpaid interest thereon to the effective date of the plan approximately $507.78 of new first and consolidated mortgage bonds, Series A, and $829.72 of new general-mortgage income bonds, Series A.

"Holders of the existing first and refunding bonds of the debtor shall receive for each $1,000 bond and all unpaid interest thereon to the effective date of the plan approximately $328.09 of new first and consolidated mortgage bonds, Series A, $295.17 of new general-mortgage income bonds, Series A, and $730.91 par amount of new preferred stock.

"Holders of the existing second-mortgage bonds of the debtor shall receive for each $1,000 bond and all unpaid interest thereon to the effective date of the plan approximately $236.46 par amount of new preferred stock and $1,150.00 of new no-par value common stock, stated at $100 a share.

"Holders of the existing general-mortgage bonds of the debtor shall receive for each $1,000 bond and all unpaid interest thereon to the effective date of the plan approximately $57.01 par amount of new preferred stock and $919.17 of new no-par-value common stock, stated at $100 per share, plus the non-par-value common stock representing the participation of such bonds in the stock allotted in respect of the unmortgaged assets.

"Holders of the existing bonds of The Paterson Extension Railroad Company shall receive for each $1,000 bond and all unpaid interest thereon to the effective date of the plan $1,200 of new no-par-value common stock, stated at $100 a share, in addition to their pro rata share in the noncarrier lands (appraised for the purposes of the plan, with the approval of the court, at $55,634.-50) subject to the mortgage of the Paterson Extension Company, which are to be conveyed to a new company or to a trustee for sale and the proceeds distributed to the Paterson Extension bondholders. Unpaid amounts which became due on coupons prior to June 1, 1937, aggregating about $8,287.50, shall be paid in cash at reorganization or by the reorganized company. To the extent that claims are filed and allowed on outstanding first and refunding mortgage bond-scrip certificates in the principal amount of $533 and coupon obligations of first-mortgage bonds due in 1895 in the amount of $30, such claims shall be classified in accordance with the court's classification and be satisfied in cash or new securities on the same basis as other claims in the same class or be disposed of otherwise as the court shall direct.

"The holders of unsecured claims against the debtor's estate allowed by the court, including the principal of the claim of the general mortgage bondholders to the extent not satisfied through the distribution of new preferred stock and no-par-value common stock allotted to the mortgaged assets, both taken at $100 a share, shall each receive the proportion of the 4,000 shares of no-par-value common stock allotted to the unmortgaged assets which his claim bears to the total of such claims.

"The bonds of the Passaic and New York Railroad Company held by the debtor's trustee shall be canceled."

It should be noted that the seventh paragraph of Section XIII was modified by the Commission to read as follows: "Holders of the existing bonds of the Paterson Extension Railroad Company shall receive for each $1,000 bond and on all unpaid interest thereon to the effective date of the plan $1,200 of new no-par-value common stock, stated at $100 a share in addition to their pro rata share in the proceeds of the noncarrier lands subject to the mortgage of the Paterson Extension Railroad Company, all of which such lands have now been sold by the debtor's trustee, the proceeds of such sales amounting to $55,369.54." This modification was necessary because of the sale of non-carrier lands which were subject to the mortgage of the Paterson Extension Railroad Company. This modification, however, does not adversely affect the allocation of new securities.

The allocations of new securities and stock and the relation of such allocations to the claims of bondholders and unsecured creditors is accurately reflected in Ap-

pendixes A and B, annexed to the Supplemental Report dated March 5, 1945, copies of which are hereto annexed. These allocations appear to give full recognition to the relative priorities of the secured claims as heretofore established in the proceedings in this court. (See Order No. 235 entered Nov. 2, 1942. See also Appendix A of this opinion).

We have examined the proposed allocation of new securities and stock in the light of the principles announced by the Supreme Court in the following cases: Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982; Ecker v. Western Pacific R. Corp., supra; Group of Institutional Investers v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959. It is our opinion that these allocations are fair and equitable and do not discriminate unfairly in favor of any class of creditors affected by the plan of reorganization. These allocations accord to the senior interests full compensatory treatment consistent with the new capital structure.

## Exclusion of Stockholders

There appears to be no reason to discuss at length the exclusion of stockholders in the absence of any objection thereto. It appears from the record that the Commission has determined that (1) "the claims of the creditors cannot be satisfied in full within the scope of the total capitalization"; (2) "the owners of the common and preferred stock, with a book value of December 31, 1942, of $25,791,163.00, could have no equity and would be entitled to no new securities"; and (3) "the equity of the existing classes of preferred and common stockholders has no value." See Summary of Report, dated July 19, 1944, page 67; See also 257 I.C.C., page 654, and 261 I.C.C., page 110. We have carefully reviewed the entire record made before the Commission and we find that the determination is adequately supported by the evidence. This determination is therefore affirmed and adopted by this court.

## Modification of the Plan

It appears from the second Supplemental Report and Order, dated March 12, 1951, that the Commission has approved several modifications of the plan of reorganization. These modifications are embodied in the said order and the reasons therefor are fully discussed in the said report. It is stated in the report, at page 12, that the modifications "are solely for clarification or to adapt the plan to the present situation as to parties or obligations assumed or paid since our prior approval." There are no objections to these modifications.

The proponents of the plan have directed our attention to the proposed modification of Section XI of the Plan of Reorganization. See Order of March 12, 1951, page 2, paragraph 3. We have examined the proposed modification embodied in the said order and Section XI of the Plan of Reorganization as originally approved by the Commission on March 5, 1945, and it would appear that the Commission in its order of March 12, 1951 has inadvertently omitted the following provision of Section XI: "The affirmative vote of at least two-thirds of the preferred stock shall be required as a prerequisite to any charter or bylaw amendment altering materially any existing provisions of such preferred stock." It is possible that this omission could be construed as a substantial change in the plan, but it is our opinion that no such change was intended. This opinion appears to be supported by the second Supplemental Report in which it is stated that the modification was approved for the purpose of "clarification." See pages 12 and 18.

The conclusion that the omission was inadvertent seems to be further supported by the express language of Section XII of the Plan of Reorganization, the pertinent provisions of which read as follows: "Holders of common stock shall be entitled to one vote per share on all matters except * * * (3) to the extent that provision is made herein that the preferred stock, voting as a class, shall have the right to elect not less than two directors after default of the equivalent of six quarterly dividends whether or not earned and whether or not the defaults are consecutive and that *the affirmative vote of at least two-thirds of the preferred stock shall be required as a prerequisite to any charter or bylaw amend-*

*ment altering materially any existing provision of such preferred stock."* (Emphasis by the Court). The Commission's order of March 12, 1951 contains no provision modifying this section.

It seems reasonably apparent that Section XI and Section XII will be inconsistent unless the omission is corrected. It seems reasonable to conclude that the Commission did not intend to create such an inconsistency especially where, as here, the obvious purpose of the modification of Section XI was to clarify the language therein which was deemed to be ambiguous and controversial.

We entertain some doubt as to our jurisdiction to correct this obvious defect unless the omission was inadvertent. We shall, however, enter an order making the necessary correction, but the entry of this order is based solely on the conclusion that the omission was inadvertent. The matter should be promptly called to the attention of the Commission and, if it is determined by it that our conclusion is erroneous, we shall entertain an application to vacate the order. We adopt this course only to avoid further delay which may prove prejudicial to the junior interests.

### Effective date of the Plan

The effective date of the plan is January 1, 1944, as fixed by the commission in its Supplemental Order of March 5, 1945. The Commission deemed it inadvisable to change this date for the reasons fully stated in its Second Supplemental Report of March 12, 1951. We agree with the reasons therein stated and the determination by the Commission that the effective date of the plan should not be changed. It should be noted that there is no objection to the effective date of the plan.

### Objections of Edith A. Merritt

The objections of Miss Merritt were not filed within time but we have nevertheless considered them because they have been heretofore urged at the hearings held by the Commission. These objections have been considered by the Commission and discussed at length in its earlier reports, and further discussion seems unnecessary. It is our opinion that the objections are without merit.

### Appendix A.

(Pertinent provisions of Order No. 235, entered November 2, 1942).

"8. The Terminal, Midland, Refunding, Second and General Mortgages are valid and subsisting liens, with priority in the order in which said Mortgages are named in this Eighth paragraph, on the Edgewater Terminal properties, which consist of the property shown in "Schedule of Property" and by boundary lines on the four maps constituting Exhibit 47, and designated on Map V–4–N.J.–1, as parcels numbers 1, 3, 5 (except so much thereof as lies on the easterly side of the main line right of way of the Hudson River Railroad and Terminal Company), 6, 7, 8, 9, 10 and 11; and on Map V–4–N.J.–2, as parcels numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13; and on Map V–4–N.J.–3, as parcels numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16; and on Map V–4–N.J.–4 as parcels numbers 1, 2, 4, 5 (excluding parcel marked 5–1), 6, 7, 9, 10, 11, 12, 13 and 15.

"9. The Terminal, Midland, Refunding, Second and General Mortgages are valid and subsisting liens upon the Little Ferry Yard, which consists of the property shown in "Schedule of Property" and by boundary lines on a map which is a supplemental exhibit, known as Map V–3–N.J.–2, and designated thereon as parcels numbers 6, 7, and 9; as shown in "Schedule of Property" and by boundary lines on Map V–4–N.J.–1, Exhibit 47, and designated thereon as parcels numbers 2, 4 and 5 (only so much thereof as lies on the easterly side of the main line right of way of the Hudson River Railroad and Terminal Company).

"10. The Terminal Mortgage constitutes the first lien upon that part of the Little Ferry Yard indicated in "Schedule of Property" and by boundary lines on Map V–4–N.J.–1, Exhibit 47, and designated thereon as parcels numbers 2, 4, and 5 (only so much thereof as lies on the easterly side of the main line right of way of the

Hudson River Railroad and Terminal Company).

"10. The Terminal Mortgage constitutes the first lien upon that part of the Little Ferry Yard indicated in "Schedule of Property" and by boundary lines on Map V–4–N.J.–1, Exhibit 47 and designated thereon as parcel number 5 (only so much thereof as lies on the easterly side of the main line right of way of the Hudson River Railroad and Terminal Company), followed by the respective liens of the Midland, Refunding, Second, and General Mortgages in the order in which such mortgages are named in this paragraph Tenth.

"11. The Midland Mortgage constitutes the first lien upon that part of the Little Ferry Yard indicated in "Schedule of Property" and by boundary lines on a map which is a supplemental exhibit, known as Map V–3–N.J.–2, and designated thereon as parcels numbers 6, 7, and 9; as shown in "Schedule of Property" and by boundary lines on Map V–4–N.J.–1, Exhibit 47, and designated thereon as parcels numbers 2 and 4, followed by the respective liens of the Refunding, Second, General and Terminal Mortgages, in the order in which such mortgages are named in this paragraph Eleventh.

"12. The Passaic and New York Mortgage is the only valid and subsisting mortgage lien upon the property of the Passaic and New York Railroad Company.

"13. None of the mortgages is a valid and subsisting lien upon any property owned or held by the Lodi Branch Railroad Company, The Hackensack & Lodi Railroad Company, the Erie Terminals Railroad Company or the Susquehanna Connecting Railroad Company; or upon the capital stock or any interest of the Debtor in the Lodi Branch Railroad Company, The Hackensack & Lodi Railroad Company, the Passaic and New York Railroad Company, the Erie Terminals Railroad Company or the Susquehanna Connecting Railroad Company, or upon the earnings of the properties of any of said companies; or upon the Debtor's interest in any of the Agreements referred to in Finding VIII–1 to 6, inclusive, of the Findings of Fact herein.

"14. The Refunding, Second and General Mortgages are valid and subsisting first, second and third liens, respectively, and are the only mortgage liens, on the Mine Branches in Pennsylvania, described in Finding V–(4)–1, of the Findings of Fact herein.

"15. The Paterson Extension, Refunding, Second and General Mortgages are valid and subsisting first, second, third and forth liens, respectively, and are the only mortgage liens, on the property of the former Paterson Extension Railroad Company.

"16. Neither the Terminal, Midland, Refunding, Second nor General Mortgage is a valid and subsisting lien upon the fifteen (15) lots in the City of Passaic, New Jersey, identified on Exhibit 81 in this proceeding."

## APPENDIX A

### Method of Distribution of New Securities

..........................................Terminal and Midland Part....................................

| | Terminal and Midland Part Total (1) | Terminal Bonds | Midland Bonds (including Northern and Southern Extension) | Passaic and New York Division | Paterson Extension Bonds | Hackensack & Lodi Division |
|---|---|---|---|---|---|---|
| **Amount of Claims** | | | | | | |
| Principal............ | ............... | $2,000,000 | $3,489,000 | ,.......... | $200,000 | .......... |
| Interest to January 1, 1944 on Coupons due on or after June 1, 1937 | ............... | ..........(2) | 1,177,538 | .,......... | 70,833 | .......... |
| Total claims | ............... | $2,000,000 | 4,666,538 | .......... | 270,833 | .......... |
| 1. Adjusted Income Available for Fixed Charges | $62,690.89 | 84,279.26 | 15,107.30(D) | (3) | 3,971.70(D) | (4) |
| 2. Line 1 expressed as per cent of System Total | 75,43282% | ............... | ............ | .......... | .......... | .......... |
| **3. NEW FIXED INTEREST BONDS:** | | | | | | |
| (a) Distribution between two parts on percentage basis (See Line 2) | (3,771,641) | ............... | ............ | .......... | .......... | .......... |
| (b) Distribution within parts | 3,771,641 | 2,000,000 | (37.97%) 1,771,641 | .......... | ,.......... | .......... |
| **4. NEW INCOME BONDS:** | | | | | | |
| (a) Distribution between two parts on percentage basis (See Line 2) | (3,017,313) | ............... | ............ | ,........... | ,........... | .......... |
| (b) Distribution within parts* | 2,894,897 | | (62.03%) 2,894,897 | ,.......... | ,.......... | .......... |
| **5. DISTRIBUTION OF NEW PREFERRED STOCK** | ............... | ............... | | ,.......... | ,.......... | .......... |
| **6. DISTRIBUTION OF COMMON STOCK** (No-par shares, stated at $100 a share) | | | | | | |
| (a) To mortgage claimants | ............... | ............... | ............. | .......... | 240,000*** | .......... |
| (b) To accord recognition of unmtg'd assets | ............... | ............... | ............. | ,.......... | | .......... |
| (c) Total allocation of common stock | ............... | ............... | ............. | ,.......... | 240,000 | .......... |
| **7. TOTAL NEW SECURITIES****** | $2,000,000 | $4,666,538 | | | 240,000*** | |
| **8. PERCENT OF TOTAL CLAIMS SATISFIED** | | 100% | 100% | | 109.16%*** | |

*Giving effect to transfer to Refunding Part of $122,416 allocated to Terminal and Midland Part in excess of requirements of Midland bonds.

**Based upon the amount of unsecured claims as shown at the time of the submission of the plan, and subject to adjustment on the basis of the final determination of the amount of the unsecured claims.

***Taken in connection with conveyance of $55,634 of noncarrier assets.

****Exclusive of equipment obligations of $452,844.

*****Percentage reflects allocation as to pledged second-mortgage bonds in preceding column.

D—denotes deficit        See other notes to Appendix A on following page.

## APPENDIX A

### Method of Distribution of New Securities

........Refunding Part .......................................... Bonds wholly Junior........

| Unmortgaged Assets (Unsecured Claims) | Refunding Part Total (1) | Refunding Bonds | Second Mortgage Bonds | General-mtg. bonds (to extent secured by pledge of 2nd mtg. Bonds) | General-mtg. Bonds | System Total |
|---|---|---|---|---|---|---|
| $2,388,258 | ......... | $3,744,000 | $448,000 | $552,000 | $2,551,000 | ......... |
| ............ | ......... | 1,326,000 | 141,680 | 174,570 | 882,221 | ......... |
| 2,388,258 | ......... | 5,070,000 | 589,680 | 726,570 | 3,433,221 | : |
| 2,509.37(D)(5) | 20,417.35 | 20,417.35 | ......... | ......... | ......... | $83,108.24 [6] |
| ............ | 24.56718% | ......... | ......... | ......... | ......... | 100% |
| ............ | (1,228,359) (24.23%) | ......... | ......... | ......... | ......... | 5,000,000 |
| ............ | 1,228,359 | 1,228,359 | ......... | ......... | ......... | do |
| ............ | (982,687) (21.80%) | ......... | ......... | ......... | ......... | 4,000,000 |
| ............ | 1,105,103 | 1,105,103 (53.97%) | (20.02%) | (20.02%) | ......... | do |
| ............ | | 2,736,538 | 118,031 | 145,431 | ......... | 3,000,000 |
| ............ | ......... ......... | | (87.37%) 515,200 | (87.37%) 634,800 | (49.81%) 1,710,000 | 3,100,000 |
| (16.33%) 390,075** | ......... ......... | | ......... | ......... | (0.29%) 9,925*** | 400,000 |
| 390,075 | ......... ......... | | 515,200 | 634,800 | 1,719,925 | 3,500,000 |
| 390,075 | | 5,070,000 | 633,231 | 780,231 | 1,719,925 | 15,500,000**** |
| 16.33% | | 100% | 107.39% | 107.39% | 72.82%***** | |

*Giving effect to transfer to Refunding Part of $122,416 allocated to Terminal and Midland Part in excess of requirements of Midland bonds.

**Based upon the amount of unsecured claims as shown at the time of the submission of the plan, and subject to adjustment on the basis of the final determination of the amount of the unsecured claims.

***Taken in connection with conveyance of $55,634 of noncarrier assets.

****Exclusive of equipment obligations of $452,844.

*****Percentage reflects allocation as to pledged second-mortgage bonds in preceding column.

D—denotes deficit          See other notes to Appendix A on following page.

## APPENDIX B

Present capital structure, distribution of new securities, summary of plan (including annual charges) and distribution of new securities per $1,000 principal amount of claim.

| Obligations and stock | Principal | Total claims, including unpaid interest to Jan. 1, 1944 | Assumed | Terminal 4% bonds maturing January 1, 1994 | First and Consolidated 4% Bonds maturing Jan. 1, 2004 | General Mtge. 4½% Inc. Bonds Maturing Jan. 1, 2019 |
|---|---|---|---|---|---|---|
| Equipment obligations | $ 452,844 | $ 452,844 | $452,844 | | | |
| Terminal 5% | 2,000,000 | 2,000,000 | | $2,000,000 | | |
| Midland 1st 5s due 4-1-40 | 3,489,000 | 4,666,538 | | | (37.97%) $1,771,641 | (62.03%) $2,894,897 |
| First & Ref. 5s due 1-1-37 | 3,744,000 | 5,070,000 | | | (24.23%) 1,228,359 | (21.80%) 1,105,103 |
| Second 4½s due 2-1-37 | 448,000 | 589,680 | | | | |
| General 5s due 8-1-40 | 2,551,000 · | 3,433,221 | | | | |
| Paterson Ext. 1st 5s due 6-1-50 | 200,000 | 270,833 | | | | |
| Unsecured claims | 2,388,258 | | | | | |
| Preferred stock | 13,000,000 | | (Found to have no equity; does not participate) | | | |
| Common stock | 13,000,000 | | (Found to have no equity; does not participate) | | | |
| | | | $452,844 | $2,000,000 | $3,000,000 | $4,000,000 |

### Summary of Plan and Charges

| | Principal Amt. | Initial annual charges |
|---|---|---|
| **Fixed interest debt** | | |
| Equipment obligations | $ 452,844 | $ 9,623 |
| Terminal bonds, 4% | 2,000,000 | 80,000 |
| First & Cons. bds. 4% | 3,000,000 | 120,000 |
| Total fix'd int. debt | 5,452,844 | 209,623 |
| **Other obligations & charges** | | |
| Add. & betterments fund | | h 62,000 |
| Sinking fund | | 20,000 |
| Con'nt int. bds. 4½% | 4,000,000 | 180,000 |
| Total debt and charges before dividends | 9,452,844 | 471,623 |
| **Stocks:** | | |
| Preferred, 5% | 3,000,000 | 150,000 |
| Common, no par, stated at $100 a share | 3,500,000 | |
| Total capitalization and total charges through preferred stk. dividends | 15,952,844 · | 621,623 |

h The basic amount of the fund is $130,000 through May 1, 1950, and $85,000 thereafter, made up of funds resulting from charges for depreciation of roadway and structures and the remainder from available net income. The $62,000 represents the portion payable out of available net income through May 1, 1950, on the assumption that funds resulting from the depreciated charges will be approximately $68,000 a year.

## APPENDIX B

Present capital structure, distribution of new securities, summary of plan (including annual charges) and distribution of new securities per $1,000 principal amount of claim.

| Preferred Stock 5% | Common Stock, no-par-value stated at $100 a share | Total Capitalization | Distribution of new securities other than the Terminal bonds, per $1,000 principal of old claim | | | |
|---|---|---|---|---|---|---|
| | | | 1st & cons. mtg. bonds | General mtg. income bonds | Preferred Stock Shares | Common Stock Shs. |
| | | $ 452,844 | | | | |
| | | 2,000,000 | | | | |
| | | 4,666,538 | $507.78 | $829.72 | | |
| (53.97%) 2,736,538 | | 5,070,000 | 328.09 | 295.17 | 7.3091 | |
| (20.02%) 118,031 | (87.37%) 515,200 | 633,231 | | | 2.6346 | 11.50 |
| (20.02%) b 145,431 | a (68.59%) b 634,800) c 1,710,000) d 9,925) | 2,500,156 | | | .5701 | f 9.2306 |
| | e 240,000 | 240,000 | | | | 12.00 |
| | g 390,075 | 390,075 | | | | g 1.633 |
| $3,000,000 | $3,500,000 | $15,952,844 | | | | |

### Notes:

a This percentage relates to the entire allotment from the three sources shown below.

b This stock is allotted with respect to $552,000, principal amount, of pledged second-mortgage bonds and $174,570 of interest thereon.

c Allotted with respect to the mortgage lien on the properties.

d Allotted as share in unmortgaged assets for unsatisfied amount of principal of claim and is subject to adjustment on basis of final determination of amount of unsecured claims.

e In addition, these bondholders receive the beneficial interest in noncarrier property appraised at $55,-634, which value added to the common stock produces 109.16 percent of claim.

f Of this, approximately .0389 represents participation in the unmortgaged assets and is subject to adjustment as indicated in note d.

g Based upon the amount of unsecured claims as shown at the time of the submission of the plan, and subject to adjustment on the basis of the final determination of the amount of the unsecured claims.