909 P.2d 497

**DESERT SUN LOAN CORP., an Arizona corporation, Plaintiff–Appellee,**

**Brooke Water L.L.C., Real Party in Interest,**

v.

**CONSOLIDATED WATER UTILITIES LIMITED PARTNERSHIP, an Arizona limited partnership; Lawrence M. Stewart and Mary Gayle Stewart, husband and wife; Spencer D. Stewart and Mary Jane Stewart, husband and wife; Lawrence M. Stewart as Trustee for the L.M. Stewart Revocable Trust of November 6, 1981, Defendants–Appellants.**

No. 1 CA–CV 93–0188.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 21, 1995.

Reconsideration Denied Jan. 17, 1996.

Murphy & Posner by Terry L. Rakow, Robert N. Brier, Phoenix, for Plaintiff–Appellee.

Douglas G. Wymore, Phoenix, for Defendants–Appellants.

## OPINION

KLEINSCHMIDT, Judge.

Consolidated Water Utilities Limited Partnership appeals from summary judgment on a promissory note payable to Desert Sun Loan Corporation. Consolidated contends the trial court erred in holding that its assumption of liability on the note was within the statutory exception to the general requirement that a public service corporation obtain advance authorization from the Arizona Corporation Commission before issuing any stocks, bonds, notes or other evidences of indebtedness. Ariz.Rev.Stat.Ann. ("A.R.S.") § 40–302(A) and (D). We disagree with Consolidated and affirm.

Consolidated is a public service corporation under the jurisdiction of the Arizona Corporation Commission. In 1983, it received a large condemnation award and began investing some of the proceeds in real estate. From November 1986 to March 1988, the law firm of Jones, Jury, Short & Mast assisted Consolidated with real estate transactions.

Four of the principals in Jones, Jury, Short & Mast were also the partners in an entity known as 722 Investments. In December 1985, 722 Investments had bought a building at 722 East Osborn Road in Phoenix for $2.62 million, borrowing $450,000 from Chase Bank and $2.2 million from Seaman's Bank to do so. On December 31, 1986, 722 Investments sold the building to Consolidated for $3.5 million. Consolidated took the property subject to the note to Chase Bank and the note to Seaman's Bank. Consolidated also gave 722 Investments an $807,189.23 carry-back note to evidence the remainder of the purchase price.

The note to Chase Bank matured on December 1, 1987, and remained unpaid. Consolidated failed to pay 722 Investments in accordance with the terms of its carry-back note. In April 1988, Consolidated, Chase Bank and 722 Investments entered into an Assumption and Modification Agreement under which Consolidated agreed to assume the $450,000 Chase Bank note and pay $50,000 on it immediately; Consolidated agreed to cause its principals to guarantee the Chase note; Chase Bank extended the maturity date of its note to December 1, 1988; and Chase Bank agreed to release 722 Investments and its guarantors from all liability on the original Chase note. The assumption agreement was part of the consideration for a contemporaneous modification of Consolidated's note to 722 Investments. Consolidated entered into the Assumption and Modification Agreement without obtaining the consent of the corporation commission.

Consolidated defaulted on the modified note to Chase Bank and Chase Bank assigned that note to appellee Desert Sun Loan Corporation, which brought this action against Consolidated and its guarantors for breach of contract. The court granted Desert Sun's motion for summary judgment. On Consolidated's motion for reconsideration, the court reversed itself because it concluded that the assumption of the note had not been approved by the corporation commission as required by law.

Arizona Revised Statutes section 40–302 provides in pertinent part:

A. Before a public service corporation issues stocks and stock certificates, bonds, notes and other evidences of indebtedness, it shall first secure from the commission [ACC] an order authorizing such issue . . . .

. . . . .

D. **A public service corporation may issue notes, not exceeding seven per cent of total capitalization if operating revenues exceed two hundred fifty thousand dollars, for proper purposes and not in violation of law payable at periods of not more than twelve months after date of issuance, without consent of the commission,** but no such note shall, wholly or in part, be refunded by any issue of stocks or stock certificates, bonds, notes or any other evidence of indebtedness without consent of the commission.

(Emphasis added.) Arizona Revised Statutes section 40–303(A) provides:

All stock and every stock certificate, and **every bond, note or other evidence of**

**indebtedness of a public service corporation, issued without a valid order of the commission authorizing the issue,** or if issued with the authorization of the commission but not conforming to the order of authorization of the commission, **is void,** but no failure in any other respect to comply with the terms or conditions of the order of authorization of the commission shall make the issue void, except as to a person taking the issue other than in good faith and for value and without actual notice.

(Emphasis added.)

Desert Sun moved again for summary judgment on its contract claim against Consolidated. It alleged that Consolidated had revenue of more than $250,000 and that the note did not exceed 7% of Consolidated's total capitalization. It showed that Consolidated's operating revenues exceeded $250,-000 in both 1987 and 1988, and that as of December 31, 1987, the sum of Consolidated's debt and equity was $37,690,868, and as of June 30, 1988, it was $38,142,560. The trial court granted the motion, finding that Consolidated had not come forward with any evidence to refute Desert Sun's statements of fact concerning the amounts of Consolidated's capitalization and operating revenue. Consolidated and its guarantors appealed. While this appeal was pending, Desert Sun assigned its interest in its judgment against Consolidated to Brooke Water L.L.C. The assignment did not affect Desert Sun's claims against the remaining Defendants.

■ On appeal, Consolidated contends that its assumption of liability on the Chase Bank note failed to meet the criteria of A.R.S. section 40–302(D) that would have excepted it from the requirement of prior approval by the corporation commission. It argues first that the note was not payable within twelve months of its issuance because the original note was issued in November of 1985 and the assumption agreement extended its maturity date to December 1, 1988. We disagree. The original note matured on December 1, 1987, and was not paid. Consolidated did not become liable on the indebtedness the note represented until it assumed and agreed to pay that note by the agree-

ment of April 7, 1988. The maturity date for the debt thus assumed was December 1, 1988. This new indebtedness was payable by Consolidated within twelve months of the assumption date. As far as Consolidated was concerned, that date was the "date of issuance" of the note within the meaning of A.R.S. section 40–302(D).

■ Consolidated further contends that if its assumption of liability on the note was a new debt, then it constituted a refinancing of a previous note which required the corporation commission's approval under section 40–302(D). Again we disagree. The exclusion in the statute is plainly aimed at defeating attempts by a single public service corporation to avoid the twelve-month maturity limitation by repeated refinancings. Here, in contrast, Consolidated was not obligated on the original note, and its assumption of liability on it was not a "re-funding" transaction within the meaning of the statute.

■ Consolidated also contends that the trial court erred in setting the total capitalization too high by defining that phrase as it is used in A.R.S. section 40–302(D) as Consolidated's total debt and equity. Consolidated asserts this definition defeats the evident purpose of the statute by permitting public service corporations to take on burgeoning, pyramiding amounts of debt without approval by the corporation commission. It urges instead that "total capitalization" within the statute be interpreted to mean the corporation's net worth, otherwise referred to as the owner's equity, which it defines as the difference between the value of the corporation's assets and its liabilities at any given time. If "total capitalization" were defined in this way, the debt would have exceeded the 7% limit so that corporation commission approval was required.

When the legislature amended A.R.S. section 40–302(D) to add the 7% of "total capitalization" limitation and the $250,000 operating revenues minimum, 1976 Ariz.Sess.Laws Ch. 44, section 1, it did not define that term. There is no legislative record that would shed light on the legislature's intended meaning and no Arizona decision we are aware of has interpreted "total capitalization," or the

word "capitalization," in the context of A.R.S. section 40–302(D) or anything analogous to it.

Arizona Revised Statutes section 1–213 provides: "Words and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." While the word "capitalization" is a term most often used in the fields of finance, economics, and accounting, we are not aware that it has acquired either a single technical or peculiar meaning.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (G. & C. Merriam Co. 1969) defines "capitalization" in part as follows:

1 ... c: the total liabilities of a business including both ownership capital and borrowed capital d: the total par value or the stated value of issues of no par value of the authorized capital of a company—called also *capital stock* e: the bonds and capital stock of a company

At 332. Similarly, the RANDOM HOUSE DICTIONARY (Unabr. 2d Ed.1983) defines "capitalization" in part as: "3. *Accounting* a. the total investment of the owner or owners in a business enterprise b. the total corporate liability c. the total arrived at after addition of liabilities." At 309.

■ It is evident from these definitions that, contrary to Consolidated's argument, "capitalization" is not equivalent to "net worth." The legislature was clearly familiar with the term "net worth" and would have used it if it had intended that meaning. *See, e.g.,* A.R.S. §§ 5–107(B), 6–943(C), 6–973(D), 11–297(B), 20–1095.02(A), 28–1304.02(Q), 32–1021(B), 36–125.04(C). In the world of finance and accounting, "capitalization" refers either to the par or stated values of a business's authorized and issued capital stock, or alternatively to the value of all its "liabilities" including ownership capital and borrowed capital. Since the par value of a corporation's stock is rarely a realistic gauge of its worth, we doubt that the legislature intended that definition to apply. The legislature did not use the term "capitalization" by itself, but referred to "total capitalization." We

conclude that the legislature most likely intended that "total capitalization" mean the corporation's combined ownership capital and borrowed capital. Decisions from other jurisdictions use the phrase "total capitalization" in precisely this way. *See, e.g., In re New York, Susquehanna & Western R.R.,* 103 F.Supp. 981, 982 (D.N.J.1951), *aff'd,* 196 F.2d 216 (3d Cir.1952); *Estate of Neff v. Commissioner of Internal Revenue,* 1989 WL 59828 at 8, 18, 57 T.C.M. (CCH) 669 (USTC 1989); *Miller v. Commissioner of Internal Revenue,* 68 T.C. 767, 768, 1977 WL 3609 (USTC 1977).

■ Our interpretation will not result in the debt-pyramiding mischief that Consolidated predicts. Arizona Revised Statutes section 40–302(D) does not operate in a vacuum. It presupposes that most, if not all, of a public service corporation's existing debt load will have been approved by the corporation commission pursuant to A.R.S. section 40–302(A). Moreover, contrary to Consolidated's evident supposition, A.R.S. section 40–302(D) does not provide that each individual note that a public service corporation may issue without corporation commission approval may be for an amount up to 7% of its total capitalization. It provides only that a qualifying public service corporation may issue "notes ... not exceeding seven per cent of total capitalization...." (emphasis added). The ordinary meaning of these words is that the combined total of all notes issued by a public service corporation without corporation commission approval under A.R.S. section 40–302(D) cannot exceed 7% of its total capitalization exclusive of such notes themselves. Seven percent of total capitalization is a cap on overall subsection D borrowings, not a limitation applied in whole to each individual borrowing. Additional significant borrowings without corporation commission approval under A.R.S. section 40–302(D) could accordingly occur only to the extent the corporation's net worth grows, thus increasing total capitalization, or to the extent the corporation commission itself permits an increase in total capitalization by approving additional debt pursuant to A.R.S. section 40–302(A). The trial court accorded the cor-

rect meaning to "total capitalization" as that term is used in A.R.S. section 40–302(D).

Consolidated also contends that its assumption of 722 Investments' debt to Chase Bank was not for a "proper purpose" for which money may be borrowed within the meaning of A.R.S. section 40–302(D). It reasons that this is so because its original decision to purchase the property was made without full disclosure by its attorneys and at an excessive sales price. It also argues, citing no authority, that "[a]fter the original transaction, by the time of the Assumption Agreement, the only purpose remaining was to avoid being sued on a debt that was void. There was no other proper purpose." We disagree.

Consolidated originally purchased the property in question for business and tax purposes, and it entered into the assumption agreement to partially resolve its own delinquency in paying what it owed to 722 Investments. In hindsight these transactions may have been ill-advised or induced by a breach of trust, but we cannot agree that they were not, from Consolidated's perspective, entered into for a "proper purpose."

We reject Consolidated's assertion that its only purpose in assuming liability on the debt to Chase Bank was "to avoid being sued on a debt that was void." Consolidated's purchase of the property "subject to" the debt that 722 Investments owed Chase Bank did not make the debt Consolidated's. There is no legal basis for the view that that debt was "void" when Consolidated assumed it.

The same observation disposes of Consolidated's contention that its assumption of the 722 Investments indebtedness constituted an unauthorized "re-funding" of one note with a new one. *See* A.R.S. § 40–302(D). Consolidated bought the property subject to that debt, and sensibly attempted to pay it down. This did not make the debt one on which Consolidated was liable. Accordingly, when Consolidated finally assumed that debt, it did not thereby re-fund its own previous indebtedness within the meaning of A.R.S. section 40–302(D).

Because we agree with the trial court that the corporation commission's approval of the agreement was not required, we need not reach Consolidated's argument that, if approval was required, the trial court lacked jurisdiction to grant relief on Desert Sun's contract claim on any theory.

Desert Sun requests an award of attorney's fees on appeal. We grant the request pursuant to A.R.S. section 12–341.01(B). Desert Sun may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Affirmed.

THOMPSON, P.J., and EHRLICH, J., concur.